# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA,
### NORTHERN DIVISION

| | |
|---|---|
| **RANDY PENNINGTON, HERBERT STEVENS, & OLIVER NICHOLES,** | |
| **Plaintiffs,** | |
| **vs.** | **Civil Action No. 2:19-cv-00695** |
| **HAL TAYLOR, Secretary of Alabama Law Enforcement Agency; JOHN Q. HAMM, Director of State Bureau of Investigation; CHARLES WARD, Director of Department of Public Safety; and STEVE MARSHALL, Attorney General of Alabama, all in their official capacities.** | |
| **Defendants.** | |

## FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ...................................................................1

II.  JURISDICTION AND VENUE.............................................................4

III.  PARTIES .................................................................................................5

  A.  PLAINTIFFS ..........................................................................................5

  B.  DEFENDANTS ....................................................................................15

IV.  GENERAL ALLEGATIONS...............................................................16

  A.  ALABAMA'S SORNA IS RESTRICTIVE AND DEBILITATING FOR
    REGISTRANTS—PARTICULARY CHILDREN TRIED AS ADULTS. .........16

  B.  THERE IS VIRTUALLY NO RELIEF FROM ANY PROVISION OF
    SORNA. ...............................................................................................22

  C.  CHILDREN SHOULD NOT BE SUBJECT TO THE LIFETIME
    OBLIGATIONS OF SORNA...............................................................24

    1.  CHILDREN ARE FUNDAMENTALLY DIFFERENT FROM
      ADULTS…..........................................................................................24

    2.  CHILDREN ARE ALSO DIFFERENT FROM ADULTS WITH
      REGARDS TO SEX OFFENSES. ....................................................26

    3.  SEX OFFENDER REGISTRATION STATUTES DO NOT REDUCE
      RECIDIVISM AND DO NOT INCREASE PUBLIC SAFETY. .....................27

    4.  SEX OFFENDER REGISTRATION CAUSES IRREPARABLE HARM
      TO YOUNG PEOPLE. ........................................................................30

V.  CAUSES OF ACTION...........................................................................33

VI.  PRAYER FOR RELIEF .......................................................................43

# I. PRELIMINARY STATEMENT

1.     Children who are tried and convicted as adults for sex offenses are subject to the Alabama Sex Offender Registration and Community Notification Act (SORNA), which imposes a lifetime obligation to register as a sex offender. Ala. Code § 15-20A-1 et seq. Alabama SORNA has been characterized as "the most comprehensive, debilitating sex-offender scheme in the land, one that includes not only most of the restrictive features used by various other jurisdictions, but also the unique additional requirements and restrictions nonexistent elsewhere." McGuire v. Strange, 83 F. Supp. 3d 1231, 1236 (M.D. Ala. 2015).

2.     Even though Plaintiffs committed their offenses as children, once convicted as adults, they became subject to the same employment, residence, and familial restrictions as adult offenders. These restrictions are devastating and limit their potential for rehabilitation.  There are virtually no second chances. Regardless of the age of the child at the time of offense or their life experiences after a prescribed period of incarceration—including steady employment, stable social and familial relationships, or the lack of any further offense risk—they will likely be subject to SORNA restrictions until death. This denies a child the right to have his or her age and its attendant characteristics considered pre-punishment and presumes the child to be irredeemable without any judicial determination to that effect.

3. Imposing such lifelong stigmatizing punishment is particularly disproportionate when based upon conduct committed by a child, at a time when he or she lacks the developmental maturity necessary for sound decision-making. The U.S. Supreme Court has acknowledged that "[f]rom a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed." Roper v. Simmons, 543 U.S. 551, 570 (2005).

4. As the Court explained, a child's susceptibility to immature and irresponsible behavior means that a child's "irresponsible conduct is not as morally reprehensible as that of an adult." Id. at 561 (citing Thompson v. Oklahoma, 487 U.S. 815, 835 (1988)). A child's vulnerability and comparative lack of control over his or her immediate surroundings means that children have a greater claim than adults to be forgiven for failing to escape negative influences in their environment. Id. at 570. "The reality that juveniles still struggle to define their identity means that it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character." Id. In addition, "[r]etribution is not proportional if the law's most severe penalty is imposed on one whose culpability or blameworthiness is diminished, to a substantial degree, by reason of youth and immaturity." Id. at 571.

5. The fact that children are categorically less culpable than adults and less deserving of the harshest punishments our criminal justice system imposes, see Graham v. Florida, 560 U.S. 48, 68 (2010); Roper, 543 U.S. at 570, highlights the unfairness of automatic, public, lifetime registration and underscores the devastating cost of that requirement when the law is used to impose an adult consequence onto a child.

6. Plaintiffs Herbert Stevens, Randy Pennington, and Oliver Nicholes are among the approximately 250 Alabama residents who were charged with sex offenses as children but tried and convicted as adults, served their time in jail or prison, yet continue to be subject to the lifetime registration and notification provisions of SORNA. These Plaintiffs, some released from incarceration decades ago, have been denied employment; have lost their homes; are limited in their familial interactions; are limited in their ability to worship; and/or have experienced severe mental distress, embarrassment, or stigmatization due to the application of SORNA to them—even though their crimes were committed when they were just fourteen to seventeen years of age. At no point were their age-related attributes and characteristics considered before SORNA obligations were imposed upon them.

7. Defendants are Hal Taylor, Secretary of the Alabama Law Enforcement Agency (ALEA); John Q. Hamm, Director of the State Bureau of Investigation; Charles Ward, Director of the Department of Public Safety; and Steve Marshall,

Attorney General of Alabama, all sued in their official capacities. These individuals are collectively responsible for enforcing SORNA.

8.     Plaintiffs seek declaratory relief stating that the application of SORNA to Plaintiffs, who were children at the time of their offenses, violates the U.S. and Alabama Constitutions and injunctive relief enjoining Defendants from continued enforcement of SORNA as it applies to Plaintiffs.

9.     Plaintiffs also seek attorneys' fees and costs and such other relief this Court deems equitable and just.

## II. JURISDICTION AND VENUE

10.     This action is brought pursuant to 42 U.S.C. § 1983.

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

12.     This Court has personal jurisdiction over Hal Taylor, Secretary of ALEA; John Q. Hamm, Director of the State Bureau of Investigation; Charles Ward, Director of the Department of Public Safety; and Steve Marshall, Attorney General of Alabama. All are state officials with offices in Montgomery, Alabama.

13.     This Court is authorized to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

14.    This Court is authorized to award attorneys' fees under 42 U.S.C. § 1988(b).

15.    Venue is properly set within the United States District Court for the Middle District of Alabama pursuant to 28 U.S.C. § 1391.

## III.    PARTIES

### A. PLAINTIFFS

16.    Plaintiff **Randy Pennington** was charged with rape in 1983 when he was sixteen years old for engaging in consensual sex with a married sixteen-year-old girl. Her husband reported him to law enforcement for rape. An appointed attorney urged Mr. Pennington to plea to sex abuse in the first degree. He received a four-year sentence whereby he would serve one year in the county jail and the remaining three years on probation.

17.    In 1986, while on probation, Mr. Pennington was unable to pay the many fines and fees associated with his conviction and supervision. He agreed with a friend to burgle a store so he could get money to pay his fees. He was apprehended and charged with burglary and theft.

18.    These new charges also violated Mr. Pennington's probation. He pled to the new charges and violation of probation. The court revoked his probation and sentenced him on all cases to three years imprisonment. While incarcerated, Mr. Pennington obtained his GED and an automechanic license.

5

19.    No one informed Mr. Pennington of the SORNA registration or residency requirements after his release from incarceration.  As a result, he did not register.

20.    In 2006, Mr. Pennington and his wife purchased a home in Columbiana, a town in Shelby County, Alabama. One day, he received a call from the Sheriff's Office informing him that there was a warrant for his arrest for failure to register under SORNA.

21.    In 2008, Mr. Pennington pled guilty to the SORNA violation and received three years of probation.

22.    The court also ordered Mr. Pennington to move out of his family's home because it did not meet the SORNA residence requirements.

23.    While his family stayed at their home, Mr. Pennington moved into his friend's camper at a campground in Talladega County, Alabama.

24.    After his friend received threats for allowing a registered sex offender to live in the camper, Mr. Pennington took money out of his 401K account to purchase his own camper.  He purchased his own camper and relocated back to Shelby County, Alabama, living on land behind rental property he owned.

25.    The financial strain of maintaining two residences so that Mr. Pennington could comply with SORNA has yielded disastrous results for the family.

In 2008, he and his wife foreclosed on their home in Columbiana, which they had purchased in June 2006.

26.    In the fall of 2009, Mr. Pennington was still living separately from his family in his camper. Shelby County Sheriff's Office personnel saw a motor vehicle outside of the family home while driving past the residence. He was arrested for violating a SORNA residency requirement and for failing to register the motor vehicle.  Mr. Pennington later proved he visited his family at their home, but slept in his camper elsewhere. Nevertheless, he received an additional three years of probation.

27.    While on bond for the 2009 conviction, Mr. Pennington became severely depressed and attempted suicide. As he recovered in the hospital, his wife moved the family to Jacksonville in Calhoun County, Alabama, where enforcement of the registration burdens was less restrictive than in Shelby County. Calhoun County law enforcement  permitted Mr. Pennington to travel for work.

28.    After Mr. Pennington's second arrest for violating SORNA, his son dropped out of the University of Alabama-Birmingham because he also suffered from depression due to the stresses on his family.

29.    The Penningtons eventually lost their rental property in Wilsonville, Alabama, along with their camper and boat, because of the financial upheavals SORNA caused for them.

7

30.    Mr. Pennington is unable to pick up his grandchildren from school or attend their school events because of his registration status and his fear of the stigma associated with his registration status being imposed on the grandchildren.

31.    Recently, law enforcement reached out to Mr. Pennington because an anonymous caller had reported him picking up his grandchildren at school. Although Mr. Pennington never picked up his grandchildren at school, he had to call the office to address the complaint, which made the principal aware of his status.

32.    Mr. Pennington has also faced employment consequences as a result of his status as a registered sex offender. He has worked for Southern Distributors, an auto parts distributor, for more than thirty years. He worked his way up from being a delivery driver to Purchasing Manager.

33.    In the summer of 2019, Southern Distributors was sold to a larger company that initiated drug tests and background checks on all employees. After seeing Mr. Pennington's status as a registered sex offender, the company stripped him of his management position and reduced him to an entry-level employee. He expects the company will cut his compensation in half.

34.    Mr. Pennington has also faced barriers in seeking employment elsewhere because of his registration status.

35.    The SORNA registration requirements also interfere with Mr. Pennington's ability to practice his religion.  For years, Mr. and Mrs. Pennington

have been unable to worship at local Alabama churches because of Mr. Pennington's registration status. Several church congregations ostracized the Penningtons after learning about Mr. Pennington's registration status. This stigmatization crescendoed in October of 2018, when members of a church in McCalla, Alabama, which Mr. and Mrs. Pennington had attended for several months, angrily confronted the Penningtons at their home for not disclosing Mr. Pennington's registration status. Consequently, Mr. and Mrs. Pennington stopped attending the church. In addition, Mr. Pennington no longer seeks to join a church in order to avoid further stigmatization and pain.

36.    Mr. Pennington currently lives in Hueytown, a town in Jefferson County, Alabama, with his wife and adult son.

37.    Plaintiff **Herbert Stevens** and his wife Candi have three children, ages 19, 15, and 12. Mr. and Mrs. Stevens began dating when he was fourteen and she was twelve years old. In 1996, when Mr. Stevens was seventeen and Mrs. Stevens was fifteen, Mrs. Stevens's mother became upset that the two were dating and called the police to report Mr. Stevens for statutory rape. She later requested that the district attorney drop the charges, but the district attorney declined to do so. Mr. Stevens was tried as an adult and charged with rape in the second degree. He was sent to a juvenile boot camp for six months and never finished high school.

38.    Following his release in 1998, Mr. Stevens was placed on the Alabama sex offender registry and was required to report once per year.

39.    After his release, Mr. Stevens had difficulty finding a job due, in part, to his felony and sex offender status. Frustrated with his inability to find employment, he became involved in illegal activity. In 2007, Mr. Stevens was convicted of possession and distribution of marijuana and received a fifteen-year prison sentence. In 2013, he was released on probation.

40.    In 2014, Mr. Stevens was arrested, charged, and convicted of failing to register under SORNA because the law had changed and he was not given notice that his registration requirements had become more stringent. Mr. Stevens was required to report to the registration office every ninety days and pay a fee of ten dollars each time.

41.    Mr. Stevens's conviction constituted a probation violation. He spent nearly ten months in Etowah County Jail on the SORNA violation and was then sent back to prison on the probation violation.

42.    When Mr. Stevens returned home, his neighbors were notified of his release and photographs of him were placed around the community.

43.    Over the years, the Stevens family has lived in a number of counties and has experienced stress in their attempts to comply with SORNA. While Mr. Stevens was in prison, his wife moved the family to a public housing complex. Upon

his release from prison, Mr. Stevens was not allowed to live in the public housing complex due to his SORNA status and felony conviction, so he lived separate from the family. One day when he went to pick up his children from the housing complex, a neighbor called the police and Mr. Stevens was charged with criminal trespassing.

44.    Subsequently, the family lived in a home in Gadsden, Alabama, owned by Mr. Stevens's employer, Carl Weaver, the owner of a metal plating company. Mr. Stevens has worked for Mr. Weaver on and off since 2000. The Barrie Center, an organization that serves children who are victims of abuse, moved into the building adjacent to the Gadsden home. The Stevens family became concerned about the stability of their housing situation because of its proximity to children. Law enforcement officials advised them that it would be easier to simply move to another location.

45.    Mr. Stevens's SORNA registration interferes with his ability to participate in his children's lives. When Mr. Stevens's nineteen-year-old son graduated from basic training with the military, the military refused to let Mr. Stevens attend the graduation because of his registration status. He is not listed as a parent for his two younger children at their schools, in an effort to prevent other students from bullying them. Additionally, Mr. Stevens does not volunteer at their schools or attend Boy Scouts meetings or baseball games for fear that the stigma of his registration status will be imposed upon his children.

11

46.     The Stevens family now lives in Altoona, Alabama, which they selected because it is a remote location that allows Mr. Stevens to better comply with SORNA. The rural location requires that he and his wife drive long commutes to work.

47.     The SORNA registration requirements also interfere with Mr. Stevens's ability to worship at local churches and practice his religion.  Mr. and Mrs. Stevens currently attend a rural church.  Due to the stigma associated with his registration status and because his church has a daycare and activities that involve children, Mr. Stevens severely limits his worship and participation at church.  When the family attends worship services, they isolate themselves from other worshippers. They do not participate in Sunday School and decline invitations to other church activities

48.     Mr. Stevens said that having to register is horrible and embarrassing: "It's like a rope holding [him] back [his] whole life." Mrs. Stevens said that registration is embarrassing for the whole family.

49.     Plaintiff **Oliver Nicholes** was charged with kidnapping and rape in the first degree in Baldwin County, Alabama in 1981. He was seventeen years old and the victim was a sixteen-year-old girl. Since his arrest, he has maintained that he was wrongfully convicted. He was sentenced to forty years for rape and life imprisonment for kidnapping. While in prison, Mr. Nicholes obtained his GED,

12

autobody license, and barber license, and completed his undergraduate degree through JF Ingram State Technical College and Faulkner University.

50.    Six months prior to his release on parole in 1998, the community to which Mr. Nicholes was planning to return received notice of his impending release and status as a registered sex offender. His photograph was printed in the newspaper and fliers announcing his name and release date were posted throughout the community.

51.    Upon his return home, Mr. Nicholes faced an unwelcome reception. He felt that he was unwanted in the neighborhood, so he moved to a new location. Because his new home was 1,998 feet from a school, and SORNA required him to stay at least two thousand feet from schools, he had to move yet again.

52.    Mr. Nicholes started working as a barber and eventually assumed ownership of the barber and beauty salon in or around 2002. He employed approximately seven employees.

53.    In 2014, Mr. Nicholes was stopped by the police and accused of driving under the influence. Even though he passed the field sobriety test, he was arrested. The breathalyzer results were also negative, but the police asserted that he refused to take the test. Because of this incident, he was sent back to prison on a parole violation. Consequently, he lost ownership of his barber and beauty salon.

54.     Mr. Nicholes was released again on parole in 2016. He received his Master Barber's license and began giving haircuts for income. In 2017, his wife started a healthcare company that transports individuals to their health appointments. Rather than deal with travel restrictions under SORNA that would make it difficult for him to be a driver, Mr. Nicholes assists with administrative and mechanical work for the healthcare company. Prior to assisting his wife, he had difficulty finding permanent employment. He would apply for positions and be rejected because of the restrictions imposed by SORNA.

55.     While Mr. Nicholes's son was a child, Mr. Nicholes was prohibited from attending any events at his school, or even picking up his son from school. Mr. Nicholes missed his son's graduation because SORNA prohibited registered sex offenders from being in a school. Mr. Nicholes has put his son through college and his son now has a master's degree.

56.     The SORNA registration requirements also interfere with Mr. Nicholes's ability to worship at church. Mr. Nicholes and his family do not attend Sunday School because of the proximity of children in the school-like setting. Although the Nicholes family attends church services, they isolate themselves from other people because of their discomfort about Mr. Nicholes's registration status and their perception of other people's discomfort about his status.

57.     For Mr. Nicholes, dealing with the SORNA requirements is "mentally and physically stressful" and "devastating and terrifying." He said his "livelihood was taken away" from him. He worries that people will not accept him.

## B. DEFENDANTS

58.     Defendant Hal Taylor is the Secretary of ALEA, which has the authority to "promulgate any rules as are necessary to implement and enforce" SORNA. Ala. Code § 15-20A-44; see also Ala. Code § 41-27-1 (creating ALEA and establishing two divisions, the Department of Public Safety and the State Bureau of Investigation). Mr. Taylor is sued in his official capacity.

59.     Defendant John Q. Hamm is Director of the State Bureau of Investigation and has responsibility for the sex offender registry. See State Bureau of Investigation, Ala. Law Enf't Agency, https://www.alea.gov/sbi (last visited Sept. 11, 2019); Criminal Justice Services, Ala. Law Enf't Agency, https://www.alea.gov/sbi/criminal-justice-services (last visited Sept. 11, 2019). Mr. Hamm is sued in his official capacity.

60.     Defendant Charles Ward is the Director of the Department of Public Safety and oversees driver's licenses. See Department of Public Safety, Ala. Law Enf't Agency, https://www.alea.gov/dps  (last visited Sept. 11, 2019). Mr. Ward is sued in his official capacity.

15

61.    Defendant Steve Marshall, Attorney General of Alabama, has a duty to, as appropriate, examine statutes for their constitutional validity. See Ala. Code § 36-15-1(7)-(8); see also Ala. Code § 6-6-227 ("[I]f the statute[]. . . is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the proceeding and be entitled to be heard."). Mr. Marshall is sued in his official capacity.

## IV.    GENERAL ALLEGATIONS

## A. ALABAMA'S SORNA IS RESTRICTIVE AND DEBILITATING FOR REGISTRANTS—PARTICULARY CHILDREN TRIED AS ADULTS.

62.    SORNA became effective in July 2011 and repealed all prior iterations of Alabama's sex offender law. Its stated purpose is to reduce the "danger of recidivism" by alerting the public to the "presence of sex offenders in the community" and by requiring "constant contact between sex offenders and law enforcement." Ala. Code § 15-20A-2(1).

63.    SORNA applies to every adult sex offender convicted of a sex offense as defined in the statute and applies retroactively. Ala. Code § 15-20A-3(a). An adult sex offender includes a child tried as an adult. See Ala. Code § 15-20A-4(1) (defining "adult sex offender" as simply "[a] person convicted of a sex offense"); id. § 15-20A-4(11) (defining "juvenile sex offender" as an individual under the age of eighteen at the time of offense who is adjudicated delinquent of a sex offense).

16

Conversely, an adult sex offender does not include a child adjudicated in juvenile court. See Ala. Code §§ 15-20A-4(1), 15-20A-4(11).

64.    In imposing SORNA on children tried as adults, there is no consideration of the age of the child at the time of the offense, how youth-based characteristics affected the child's decision to engage in illegal conduct, or the child's potential for rehabilitation. These children receive the same punishment as adults charged with similar crimes and are subject to the same SORNA conditions as adults.

65.    Any child tried as an adult and convicted of a sex offense is subject to SORNA for life, with few exceptions. See Ala. Code § 15-20A-3(b); Ala. Code § 15-20A-43(a) (noting that, unless otherwise provided for in the statute, a court may not modify the requirements of SORNA). Even a pardon does not mandate relief unless: (1) the offender was less than five years older than the victim at the time of the offense; (2) the victim was at least thirteen years old at the time of the offense; and (3) the sex offense was only a crime due to the victim's age and did not involve force. Ala. Code § 15-20A-43.

66.    SORNA has extensive registration and notification requirements. Ala. Code § 15-20A-1, et seq. A child tried as an adult and convicted of a sex offense must appear in person to local law enforcement in each county in which he or she resides every three months for the duration of his or her life, Ala. Code § 15-20A-

10(f), and pay a registration fee of ten dollars each time, Ala. Code § 15-20A-22(a). At each visit, personal information such as date of birth, Social Security number, residential address, employer's address, telephone numbers, email addresses, fingerprints, palm prints—even a DNA sample—must be provided or updated as necessary. Ala. Code § 15-20A-7(a). This information is then transmitted to ALEA. Id. § 15-20A-7(c). The individual's name, residential address, school address, employment address, license plate number, current photograph, physical description, and criminal history are included on the sex offender website. Ala. Code § 15-20A-8(a); see also Alabama Law Enforcement Agency Community Information Center, Ala. Law Enf't Agency, http://www.communitynotification.com/cap_main.php?office=54247 (last visited Oct. 10, 2019) (sex offender website).

67.    In addition to placement on a publicly available website, nearby residents, schools, and childcare facilities are informed if a child tried as an adult and convicted of a sex offense lives in their general vicinity. Ala. Code § 15-20A-21.

68.    Regardless of notification, a child tried as an adult and convicted of a sex offense may not reside within two thousand feet of a school, childcare facility, resident camp facility, or any property on which his or her former victim or an immediate family member of the victim resides. Ala. Code § 15-20A-11(a)-(b).

18

69.     Even if the convicted individual is a family member of a minor, an individual still may not reside with a minor if (1) parental rights of the individual have been or are in the process of being terminated; (2) the individual has been convicted of a sex offense in which any of the minor children, grandchildren, stepchildren, siblings, or stepsiblings of the individual was the victim; (3) the individual has been convicted of a sex offense in which the victim was a minor living with the individual at the time of the offense; (4) the individual has been convicted of a sex offense involving a child, regardless of whether the individual sex offender was related to or lived with the child victim; or (5) the individual has been convicted of a sex offense involving forcible compulsion and a victim who was a minor. Id. § 15-20A-11(d).

70.     Further, regardless of the age of the victim, a convicted individual cannot reside or conduct an overnight visit with a minor unless the individual is the parent, grandparent, stepparent, sibling, or stepsibling of the minor. Id.

71.     A child tried as an adult and convicted of a sex offense must report to the sheriff of the county in which he or she resides anytime he or she plans to leave the county of residence for three or more consecutive days. Ala. Code § 15-20A-15(a). For international travel, the person must give twenty-one days' notice unless the travel is due to a family or personal medical emergency or death in the family.

Id. § 15-20A-15(c). Upon return to the county of residence, the individual must immediately report to the sheriff. Id. § 15-20A-15(f).

72.     A child tried as an adult and convicted of a sex offense cannot contact his or her former victim by any means, nor knowingly come within one hundred feet of the victim, even if the victim is a family member. Ala. Code § 15-20A-16(a)-(b).

73.     A child tried as an adult and convicted of a sex offense may not maintain employment or volunteer at any school, childcare facility, business or organization that provides services primarily to children, or amusement or water park. Ala. Code § 15-20A-13(a). Nor can such an individual maintain employment or volunteer "within 2,000 feet of the property on which a school or childcare facility is located." Id. § 15-20A-13(b). This is the case regardless of whether the victim was a minor.

74.     A child tried as an adult and convicted of a sex offense involving a minor may not "loiter on or within 500 feet of the property line of any property on which there is a school, childcare facility, playground, park, athletic field or facility, school bus stop, college or university, or any other business or facility having a principal purpose of caring for, educating, or entertaining minors." Ala. Code § 15-20A-17(a).

75.     A child tried as an adult and convicted of a sex offense may not enter K-12 school property while school is in session or attend a school activity unless he

20

or she: (1) notifies the principal, or his or her designee, before entering the property or attending the activity; (2) immediately reports to the principal, or his or her designee, upon entering the property or arriving at the school activity; and (3) complies with any school procedures to monitor the whereabouts of the individual for the duration of his or her presence on the property or attendance at the activity. Id. § 15-20A-17(b).

76.    A child tried as an adult and convicted of a sex offense must obtain a license or identification card bearing a designation of the individual as a sex offender. Ala. Code § 15-20A-18(b).[1]

77.    A violation of any one of these provisions is a crime punishable by a definite term of imprisonment no less than one year and a day and no more than ten years. See, e.g., Ala. Code §§ 15-20A-10(j), 15-20A-11(j), 15-20A-12(f), 15-20A-13(g), 15-20A-14(e), 15-20A-15(h), 15-20A-16(f), 15-20A-17(c), 15-20A-18(f); see also Ala. Code § 13A-5-6(a)(3).

---

[1] Although the Middle District of Alabama recently declared this provision unconstitutional as applied under the First Amendment, Doe 1 v. Marshall, 367 F. Supp. 3d 1310, 1324-27 (M.D. Ala. 2019), the State has made clear its intent to create and enforce an alternative sex offender designation on a statewide basis, Defs' Mot. to Alter or Amend J. ¶¶ 3-5, Doe 1 v. Marshall, No. 15-606 (M.D. Ala. Mar. 11, 2019), ECF No. 168; see also Doe 1 v. Marshall, No. 16-606 (M.D. Ala. Mar. 15, 2019),ECF No. 173. (denying motion to alter or amend judgment).

## B. THERE IS VIRTUALLY NO RELIEF FROM ANY PROVISION OF SORNA.

78.    A child tried as an adult and convicted of a sex offense may petition the court for relief from the registration and notification provisions only if the person has been convicted of rape in the second degree, sodomy in the second degree, sexual abuse in the second degree, or sexual misconduct (or any solicitation, attempt, or conspiracy to commit these offenses); and the person can "prove by clear and convincing evidence" that the "offense did not involve force and was only a crime due to the age of the victim," the victim was at least thirteen years of age, and the person was less than five years older than the victim. Ala. Code § 15-20A-24(a)-(b).

79.    The determination of which court has jurisdiction to hear the petition depends on the stage of the criminal case and the location of the conviction. "At disposition, sentencing, upon completion of probation, or upon completion of a term of registration ordered by the sentencing court, a sex offender may petition the court for relief . . . ." Id. § 15-20A-24(a). If after sentencing and disposition and the individual was convicted in Alabama, the individual must petition the civil division of the circuit court where the individual was convicted. Id. § 15-20A-24(c)(1). If the person was convicted outside Alabama, the petition for relief must be filed in the civil division of the circuit court in the county in which the individual resides. Id. § 15-20A-24(c)(2).

22

80.    Even if the individual does qualify and apply for relief, the court must find "by clear and convincing evidence" that the individual "does not pose a substantial risk of perpetrating any future sex offense." Id. § 15-20A-24(h).

81.    A child tried as an adult and convicted of a sex offense may petition the civil division in the county where he or she seeks employment for relief from some of the employment restrictions only if he or she has not been convicted of the following offenses: (1) rape in the first degree; (2) sodomy in the first degree; (3) sexual abuse in the first degree; (4) sex abuse of a child less than twelve years old; (5) sexual torture; (6) any sex offense involving a child; or (7) any solicitation, attempt, or conspiracy to commit any of these offenses. Ala. Code § 15-20A-25(a). Here, too, the court must find "by clear and convincing evidence" that he or she "does not pose a substantial risk of perpetrating any future sex offense." Id. § 15-20A-25(f).

82.    A child tried as an adult and convicted of a sex offense may petition the court to reinstate contact with the victim. Ala. Code § 15-20A-16(d); see also supra ¶ 79 (discussing court after disposition or sentencing). The court may grant the petition only if (1) "[t]he victim appears in court at the time of the hearing and requests the exemption in writing in open court"; (2) "[t]he court finds by clear and convincing evidence that the victim's court appearance and written request . . . were made voluntarily"; (3) the victim is more than nineteen years old at the time of the

23

request; and (4) the district attorney or prosecuting attorney is notified of the hearing and has the right to be present and heard. Ala. Code § 15-20A-16(d). Even if the victim has no objection to contact, as is the case with Plaintiff Stevens who is married to his "victim," a court must approve the victim's right to associate with the convicted individual.

83.    These provisions offer illusory relief. Very few individuals subject to SORNA, including one of the Plaintiffs, even qualify to petition the court for such relief.

## C. CHILDREN SHOULD NOT BE SUBJECT TO THE LIFETIME OBLIGATIONS OF SORNA.

### 1. CHILDREN ARE FUNDAMENTALLY DIFFERENT FROM ADULTS.

84.    The Supreme Court has explained that the fundamental differences between adults and children mean that children are less culpable than their adult counterparts and therefore appropriate criminal penalties for youth must be determined in light of those developmental differences. See Thompson v. Oklahoma, 487 U.S. 815, 835 (1988) (invalidating death penalty for children aged sixteen and younger). Juvenile justice jurisprudence recognizes that there are major distinctions between the rights and duties of children as compared to adults because of the limited maturity that young people possess. See id. at 823.

24

85.     Lawmakers impose age-based restrictions that control when a child may vote, drive, sit on a jury, marry without parental consent, and purchase tobacco and alcohol due to the developing mental capacity of children. See id. at 823-25.

86.     As the Supreme Court has recognized, "[t]he reasons why juveniles are not trusted with the privileges and responsibilities of an adult also explain why their irresponsible conduct is not as morally reprehensible as that of an adult." Roper v. Simmons, 543 U.S. 551, 561 (2005) (quoting Thompson, 487 U.S. at 835).

87.     The culpability of children differs from that of adults. Punishments that effectively deter criminal conduct in children must account for the fact that children do not engage in the same cost-benefit analysis as adults. See id. at 561-62.

88.     Even though children are legally less culpable than adults, children tried as adults and subject to SORNA face lifetime sanctions. If a child's information is posted publicly for any significant length of time, there is little possibility that he will ever be able to rid himself of the stain and stigma that attached to him as a result of something he did as a child. This stigma is enhanced because, although his age will increase on the registry, his victim's age will not. Thus, as time passes, it will start to appear as though he was an adult offender with a child victim—even though he committed his offense when he was a child.

## 2. CHILDREN ARE ALSO DIFFERENT FROM ADULTS WITH REGARDS TO SEX OFFENSES.

89. The assumption that sex offenders are a very unique type of criminal is not supported with respect to juvenile offenders.[2]

90. Research studies demonstrate that juvenile sexual offenders are no different from other juvenile offenders.[3]

91. Many demographic studies find no differences in personality and psychosocial circumstances between juvenile sex offenders and non-sex offenders. Furthermore, youth patterns of reoffending among all juvenile offenders are similar, with nonsexual offenses predominating.[4]

92. Research studies have found no statistically significant difference between the sexual recidivism rates of children who committed sexual offenses and children who committed nonsexual violent offenses.[5]

---

[2] Elizabeth J. Letourneau & Michael Miner, Juvenile Sex Offenders: A Case Against the Legal and Clinical Status Quo, 17 Sexual Abuse: J. Res. & Treatment 293, 296 (2005); see also id. at 299 (citing Michelle E. Ford & Jean A. Linney, Comparative Analysis of Juvenile Sex Offenders, Violent Nonsexual Offenders, and Status Offenders, 10 J. Interpersonal Violence 56 (1995)).

[3] Letourneau & Miner, supra n.2, at 296.

[4] Id. at 297 (citing Michael F. Caldwell, What We Do Not Know About Juvenile Sexual Re-offense Risk, 7 Child Maltreatment 291 (2002); Franklin Zimring, An American Travesty:  Legal Responses to Adolescent Sexual Offending (2004)).

[5] See Franklin Zimring, et al., Sexual Delinquency in Racine: Does Early Sex Offending Predict Later Sex Offending in Youth and Young Adulthood?, 6 Criminology & Pub. Pol'y 507, 534 (2007); Michael Caldwell, Sexual Offense Adjudication and Recidivism Among Juvenile Offenders, 19 Sexual Abuse: J. Res.

### 3. SEX OFFENDER REGISTRATION STATUTES DO NOT REDUCE RECIDIVISM AND DO NOT INCREASE PUBLIC SAFETY.

93.     Although the stated purpose of SORNA is to enhance public safety by reducing the "danger of recidivism," Ala. Code § 15-20A-2(1), SORNA does little to effectuate this goal.

94.     There are more than thirty published studies evaluating the recidivism rates of youth who have sexually offended. The findings are remarkably consistent across studies, across time, and across population: sexual recidivism rates are low.[6] In a recent study in South Carolina, the recidivism rate for registered and nonregistered offenders was only 1%, and there was no difference between reconviction rates for registered and nonregistered offenders.[7]

95.     When rare sexual recidivism events do occur, it is nearly always in the first few years following the original adjudication.[8] As the Honorable W. Keith Watkins of this Court has acknowledged, "At a certain point, most individuals

---

& Treatment 107 (2007) (finding "the risk of sexual recidivism was statistically equal for youth treated in a residential facility for either sexual or nonsexual delinquent offenses").

[6] Michael Caldwell, et al., Study Characteristics & Recidivism Base Rates in Juvenile Sex Offender Recidivism, 54 Int'l J. Offender Therapy & Comp. Criminology 197, 198 (2010) (citing to recidivism studies dating back to 1994).

[7] Elizabeth J. Letourneau & Kevin S. Armstrong, Recidivism Rates for Registered and Nonregistered Juvenile Sexual Offenders, 20 Sexual Abuse: J. Res. & Treatment 393 (2008).

[8] Caldwell, supra n.6, at 205.

convicted of a sexual offense will be no more likely to commit another sexual offense than the rate of spontaneous 'out-of-the-blue' sexual offenses in the general population." Doe 1 v. Marshall, 367 F. Supp. 3d 1310, 1330 (M.D. Ala. 2019) (internal quotation marks omitted).

96.    The recidivism rate is lower for children than for adults. Multiple studies confirm that children sexually offend for different reasons than adults. It is rare for juvenile sexual offenders' motivations to be as sexual or predatory in nature as that of adults. Children tend to offend based on impulsivity and sexual curiosity, among other reasons.[9]

97.    With developmental maturation, a better understanding of their sexuality, and decreased impulsivity, most of these sexually inappropriate behaviors stop and only a small fraction of juvenile offenders will maintain sexually deviant behavior in adulthood.[10]

98.    Similarly, the existence of registration as a punishment does not deter first-time juvenile sex crimes.[11]

---

[9] See Michael F. Caldwell, What We do not Know about Juvenile Sexual Re-offense Risk, 7 Child Maltreatment 291 (2002); Judith Becker & Scotia Hicks, Juvenile Sexual Offenders: Characteristics, Interventions, & Policy Issues, 989 Ann. NY Acad. Sci. 397, 399-400, 406 (2003); Caldwell, supra n.6, at 197-98.
[10] Caldwell, supra n.6, at 205.
[11] Elizabeth J. Letourneau et al., Effects of Sex Offender Registration Policies on Juvenile Justice Decision-making, 21 Sexual Abuse: J. Res. & Treatment 149 (2009).

99.    SORNA acknowledges that differences exist between children and adults.  "All juvenile sex offenders must undergo a risk assessment, and a hearing must be held by the court to determine their level of risk to the community and the level of notification that should be provided to best protect the public." Ala. Code § 15-20A-2(2). A sex offender treatment provider performs the risk assessment and disseminates it to the sentencing court, prosecuting attorney, and juvenile probation office at least sixty days before the juvenile offender is released. Ala. Code § 15-20A-26(b). The sentencing court then conducts a hearing to determine the youth's risk to the community and the level of notification to impose. Id. § 15-20A-26(d).

100.    There is no legitimate basis to believe that children tried as adults would be any different than juveniles adjudicated of sex offenses. However, no comparable provisions exist for them, leaving these youth without any procedural protections from the full application of SORNA's stringent notification requirements.

101.    Alabama treats all individuals convicted as adults of sex offenses the same and imposes restrictions in most instances for life.

102.    At the same time, the data shows and Plaintiffs' experiences demonstrate that the requirement to register—along with limitations in employment, residence, and travel—has debilitating effects. In a South Carolina study, for example, while registration failed to reduce recidivism, it was associated with an

increased risk of new charges that did not result in new convictions, possibly indicating a "scarlet letter" effect of registration.[12]

103.    The social stigma, limitations in employment opportunities and residential options, interference with religious worship and impediments to familial and other social relationships are significant—and in Alabama, essentially unending.

### 4. SEX OFFENDER REGISTRATION CAUSES IRREPARABLE HARM TO YOUNG PEOPLE.

104.    Despite evidence to the contrary, "the common view of registered sexual offenders is that they are particularly dangerous and more likely to reoffend than other criminals." In re J.B., 107 A.3d 1, 16 (Pa. 2014); see also State v. Letalien, 985 A.2d 4, 23 n.14 (Me. 2009) (recognizing that, while sex offender registries communicate "accurate information," "a wholly stigmatizing and unwelcome public status is being communicated, not mere neutral government-held information"). Children required to register encounter psychological harm and obstacles to participating in daily life.[13]

105.    Subjecting youth to registration—including the quarterly reminder that he or she is a "sex offender" and the constant possibility of arrest arising solely as a

---

[12] Letourneau & Armstrong, supra n.7.

[13] See generally Jill Levenson & Richard Tewksbury, Collateral Damage: Family Members of Registered Sex Offenders, 34 Am. J. Crim. Just. 54, 54-58 (2009) (collecting studies).

consequence of sex offender registration requirements—uniquely stigmatizes youth.[14]

106.   Labeling youth as deviants can alter their self-image as well as societal views of their personal traits.[15]

107.   Long-term sex offender labeling is likely to interrupt the natural process of developing a positive, healthy self-identity and undermine the goals of rehabilitation.[16]

108.   Children who must register as sex offenders are often unable to develop and maintain friendships, kicked out of extracurricular activities, or physically threatened by classmates after their peers learn of their record.[17]

109.   A 2017 study revealed that registered children "were nearly twice as likely to report having been sexually assaulted in the past year," when compared to nonregistered children who have also engaged in harmful or illegal sexual

---

[14] See generally Letourneau & Miner, supra n.2, at 313-31.

[15] See Akiva M. Liberman et al., Labeling Effects of First Juvenile Arrests: Secondary Deviance and Secondary Sanctioning, 52 Criminology 345, 348 (2014).

[16] See Letourneau & Miner, supra n.2, at 307; Maggie Jones, How Can You Distinguish a Budding Pedophile From a Kid with Real Boundary Problems?, N.Y. Times Mag., July 22, 2007, available at https://www.nytimes.com/2007/07/22/magazine/22juvenile-t.html (last accessed on Sept. 11, 2019).

[17] See Jones, supra n.16; Human Rights Watch, Raised on the Registry: The Irreparable Harm of Placing Children on Sex Offender Registries in the US 56-58 (May 1, 2013), https://www.hrw.org/sites/default/files/reports/us0513_ForUpload_1.pdf.

behavior.[18] They are also "five times as likely to report having been approached by an adult for sex in the past year."[19]

110.   Children on sex offender registries are four times more likely to report a recent suicide attempt than nonregistered children who have engaged in harmful or illegal sexual behavior.[20] They also face the danger of vigilante justice: more than fifty percent of registered youth report experiencing violence or threats of violence against themselves or their family members that they directly attribute to their registration.[21]

111.   Individuals classified as sex offenders are denied access to education or have their education severely interrupted.[22] They are also categorically barred from working in certain professions.[23]

112.   Lifetime registrants and their families are also ineligible for public housing. See 42 U.S.C. § 13663(a); 24 C.F.R. § 960.204(a)(4).

113.   Registered individuals must navigate the complex, inconsistent, and ever-changing requirements of the federal government and each of the fifty states.

---

[18] Elizabeth J. Letourneau et al., Effects of Juvenile Sex Offender Registration on Adolescent Well-Being: An Empirical Examination, 24 Psychol. Pub. Pol'y & L. 105, 114 (2018).
[19] Id.
[20] Id. at 112.
[21] Human Rights Watch, supra n.17, at 56.
[22] Id. at 71-72.
[23] Id. at 73.

As these individuals cross state lines, they may be subject to an entirely different and unknown set of registration requirements, any violation of which might lead to another period of incarceration or other criminal consequences.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of the Eighth Amendment to the U.S. Constitution

114.    Plaintiffs repeat and re-allege the facts set forth in paragraphs 1 through 113 as if fully set forth herein.

115.    Mandatory, lifetime registration is punitive when imposed for childhood conduct and violates the Eighth Amendment ban on cruel and unusual punishment. U.S. Const. amend. VIII. Although the stated goal of SORNA is to protect the community against recidivism, it primarily serves societal protection and retributive purposes and is thus punitive for Eighth Amendment purposes.

116.    Mandatory lifetime registration is similar to traditional forms of punishment. Its imposition assumes that individuals require supervision, attaches at sentencing, carries the threat of incarceration for noncompliance, and requires conviction of a criminal offense. Also, like conviction of a criminal offense, SORNA shames those individuals subject to its registration requirements by labeling them "sex offenders." This label indisputably sends a message to the public that extends

beyond factual information. It further carries collateral consequences, including barriers to employment, schooling, and housing, as outlined herein.

117.  As applied to children, SORNA is also punitive because it is not rationally related to its stated non-punitive purpose. Individuals who commit sexual offenses as children are not likely to commit subsequent sex offenses. Subjecting them to mandatory, lifetime registration thus does not protect the public.

118.  Punishment is excessive if it is disproportionate to the convicted person's offense. Proportionality review must take into account that children are constitutionally different from adults for purposes of sentencing. Children are different in that they generally are inherently less culpable than adults and differ from adult sex offenders with regard to risk of reoffending.

119.  Alabama's statutory scheme does not consider the age of the offender at the time SORNA is imposed.

120.  The automatic imposition of lifetime registration and notification on children tried as adults and convicted of a sex offense violates the U.S. Constitution's prohibition on cruel and unusual punishment.

121.  At all times relevant herein, Defendants have acted under color of state law.

122.  Plaintiffs have suffered harm and will continue to suffer harm, for which there is no adequate remedy at law, as a direct and proximate cause of

Defendants' violation of their rights under the Eighth Amendment to the U.S. Constitution and 42 U.S.C. § 1983. These harms will continue unless enjoined by this Court.

## SECOND CAUSE OF ACTION
### Violation of the Ex Post Facto Clause of the U.S. Constitution

123.   Plaintiffs repeat and re-allege the facts set forth in paragraphs 1 through 113 as if fully set forth herein.

124.   Every Plaintiff was convicted of his sex offense prior to the enactment of the 2011 Alabama SORNA.

125.   The Ex Post Facto Clause of Article I, Section 9 of the U.S. Constitution forbids states from enacting any law that imposes a punishment for an act that was not punishable at the time it was committed or imposes additional punishment to that then prescribed. U.S. Const. art. I, § 9.

126.   Accordingly, the automatic imposition of the obligations of SORNA to Plaintiffs violates the Ex Post Facto Clause of the U.S. Constitution.

127.   At all times relevant herein, Defendants have acted under color of state law.

128.   Plaintiffs have suffered harm and will continue to suffer harm, for which there is no adequate remedy at law, as a direct and proximate cause of

Defendants' violation of their rights under the Ex Post Facto Clause and 42 U.S.C. § 1983. These harms will continue unless enjoined by this Court.

## THIRD CAUSE OF ACTION
### Violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution

129.    Plaintiffs repeat and re-allege the facts set forth in paragraphs 1 through 113 above as if fully set forth herein.

130.    The Fourteenth Amendment to the U.S. Constitution provides that no State shall deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV. If no fundamental right or suspect class is implicated, a court must determine whether classifications in the statute are rationally related to a legitimate governmental purpose.

131.    SORNA divides adults (including children tried as adults) convicted of sex offenses into two categories: those eligible for relief and those not eligible for relief. The finding required by the court before an eligible adult is released from registration—that the person does not pose a substantial risk of perpetrating any future sex offenses—could apply to any of the Plaintiffs who were children at the time they committed their offenses. But most of the Plaintiffs cannot petition the court successfully because they do not satisfy the minimum eligibility requirements, *e.g.*, type of offense, for relief.

36

132.    Denying the vast majority of these individuals, including two of the three Plaintiffs, the opportunity to even petition the court for relief is not rationally related to the purpose for which the statute exists, *i.e.*, to address recidivism.

133.    Alabama also divides children into two categories: those tried as juveniles and those tried as adults. There is no legitimate government purpose, in terms of risk for re-offense (*i.e.*, recidivism), for treating children tried as juveniles differently than children tried as adults.

134.    At all times relevant herein, Defendants have acted under color of state law.

135.    Plaintiffs have suffered harm and will continue to suffer harm, for which there is no adequate remedy at law, as a direct and proximate cause of Defendants' violation of their rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983. These harms will continue unless enjoined by this Court.

**FOURTH CAUSE OF ACTION**
**Violation of Due Process Clause of the Fourteenth Amendment to the U.S. Constitution**

136.    Plaintiffs repeat and re-allege the facts set forth in paragraphs 1 through 113 as if fully set forth herein.

137.    The Fourteenth Amendment of the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due

process of law." U.S. Const. amend. XIV. The Supreme Court has recognized that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (citations omitted)

138.    A court must consider three distinct factors to determine "the specific dictates of due process": (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the government's interest. Id. at 334-35.

139.    Registration as "sex offenders" deprives children convicted as adults of liberty interests in their reputation, as protected by Article I, Section 13 of the Alabama Constitution, as well as their rights to establish a home, to raise children, to obtain and maintain employment, and to worship. See Meyer v. Nebraska, 262 U.S. 390, 399 (1923).

140.    A child convicted as an adult of a sex offense is provided no meaningful opportunity to be heard. Based on his conviction alone, he is required to register as a sex offender.

141.    The express purpose under SORNA is to reduce the "danger of recidivism" by alerting the public to the "presence of sex offenders in the

community" and by requiring "constant contact between sex offenders and law enforcement." Ala. Code § 15-20A-2(1).

142.  Automatically subjecting children convicted as adults to mandatory registration under SORNA presumes that these individuals are dangerous without providing a meaningful opportunity to challenge this presumption.

143.  The presumption made by SORNA is that sex offenders who were children at the time of their offense will re-offend.  Research demonstrates this to be false.

144.  This irrebuttable presumption of dangerousness violates due process because the presumption is not necessarily or universally true and a risk assessment like that performed in juvenile court, Ala. Code § 15-20A-26, is a reasonable alternative means of ascertaining the presumed fact. See Vlandis v. Kline, 412 U.S. 441, 452 (1973).

145.  SORNA's registration requirements are unreasonable and overbroad, in light of this irrebuttable presumption, and therefore violate due process.

146.  At all times relevant herein, Defendants have acted under color of state law.

147.  Plaintiffs have suffered harm and will continue to suffer harm, for which there is no adequate remedy at law, as a direct and proximate cause of Defendants' violation of their rights under the Due Process Clause of the Fourteenth

Amendment to the U.S. Constitution and 42 U.S.C. § 1983. These harms will continue unless enjoined by this Court.

## FIFTH CAUSE OF ACTION
### Violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution

148.   Plaintiffs repeat and re-allege the facts set forth in paragraphs 1 through 113 as fully set forth herein.

149.   The Fourteenth Amendment of the U.S. Constitution protects against stigma when the stigmatization significantly alters or strips away a protected right. See Paul v. Davis, 424 U.S. 693, 711 (1976); Behrens v. Regier, 422 F.3d 1255, 1260 (11th Cir. 2005).

150.   Requiring lifetime registration for a child convicted as an adult as a sex offender will stigmatize them for their entire lives. The label will imbue the child with the reputation of a "sex offender" likely to reoffend throughout his formative years and continuing through adulthood.

151.   Sex offender registration and notification harms Plaintiffs' interests in their reputations and distinctly alters their existing rights to privacy, to establish a home, to raise children,  to obtain and maintain employment, and to worship.

152.   There are no constitutionally adequate procedures in place to determine whether children convicted as adults should be subjected to the same registration requirements as adults.

153.    This stigmatization and the lack of adequate procedures constitute constitutionally infirm deprivations of liberty.

154.    At all times relevant herein, Defendants have acted under color of state law.

155.    Plaintiffs have suffered harm and will continue to suffer harm, for which there is no adequate remedy at law, as a direct and proximate cause of Defendants' violation of their rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983. These harms will continue unless enjoined by this Court.

## SIXTH CAUSE OF ACTION
### Violation of Right to Reputation Under the Alabama Constitution

156.    Plaintiffs repeat and re-allege the facts set forth in paragraphs 1 through 113 as if fully set forth herein.

157.    Section 13 of the Alabama Constitution states that "every person, for an injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law." Ala. Const. art. I, § 13.

158.    Children have a heightened right to reputation because a child's character is not yet fully formed.

41

159.   Harm to reputation can be established where the communication is defamatory, the communication is published, and the child suffers deprivation of rights recognized by law.

160.   The sex offender label is defamatory as applied to children convicted as adults. Requiring lifetime registration for a child convicted as an adult as a sex offender will brand that child as a sex offender throughout his or her life. The child will carry the label of "sex offender" with the implication of  likelihood to reoffend throughout that child's formative years and continuing through adulthood. That label is published on the sex offender registry. The child then suffers from a deprivation of rights—including the right to privacy, right to establish a home, right to raise children, right to obtain and maintain employment, and right to worship—through adulthood.

161.   At all times relevant herein, Defendants have acted under color of state law.

162.   Plaintiffs have suffered harm and will continue to suffer harm, for which there is no adequate remedy at law, as a direct and proximate cause of Defendants' violation of their rights under the Alabama Constitution. These harms will continue unless enjoined by this Court.

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this Court:

A. Issue a judgment declaring that the application of SORNA to Plaintiffs, who committed their crimes as children, violates the U.S. Constitution, specifically the Eighth Amendment's prohibition on cruel and unusual punishment, the Fourteenth Amendment's Due Process and Equal Protection Clauses, and the Ex Post Facto Clause, as well as the right to reputation under the Alabama Constitution;

B. Enjoin Defendants from continued enforcement of SORNA as it applies to Plaintiffs, individuals who committed their offenses as children;

C. Award all Plaintiffs reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

D. Award all Plaintiffs costs of suit pursuant to 42 U.S.C. §§ 1920 and 1988; and

E. Award such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interest of justice.

RESPECTFULLY SUBMITTED this 15th day of October, 2019.

SOUTHERN POVERTY LAW CENTER

By: /s/ Jonathan Barry-Blocker

Ebony Howard (ASB-7247-O76H)
Jonathan Barry-Blocker (ASB-6818-G191)

43

Lynnette K. Miner (ASB-1600-F56Q)
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama  36104
Telephone: (334) 956-8200
Facsimile:  (334) 956-8481
ebony.howard@splcenter.org
jonathan.blocker@splcenter.org
lynnette.miner@splcenter.org

Lisa Graybill* (240544454)
SOUTHERN POVERTY LAW CENTER
201 St. Charles Avenue, Suite 2000
New Orleans, Louisiana  70170
Telephone: (504) 486-8982
Facsimile:  (504) 486-8947
lisa.graybill@splcenter.org
*Admitted *pro hac vice*


Marsha Levick* (PA22535)
Riya Saha Shah** (PA200644)
JUVENILE LAW CENTER
The Philadelphia Building
1315 Walnut Street, Suite 400
Philadelphia, Pennsylvania 19107
Telephone: (215) 625-0551
Facsimile:  (215) 625-2808
mlevick@jlc.org
rshah@jlc.org
 *Admitted *pro hac vice*
**Application for admission *pro hac vice* forthcoming