IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

RANDY PENNINGTON and      )
HERBERT STEVENS,          )
                          )
      Plaintiffs,         )
                          )
      v.                  )
                          )      CIVIL ACTION NO.
HAL TAYLOR, in his        )      2:19cv695-MHT
official capacity as      )           (WO)
Secretary of the Alabama  )
Law Enforcement Agency,   )
et al.,                   )
                          )
      Defendants.         )

OPINION

Nearly 60 years ago, Alabama enacted its first
sex-offender-registry law; since then, Alabama has passed
multiple new registry laws, each more restrictive than
the last. In 2011, Alabama repealed its previous
sex-offense-registry scheme, the Alabama Community
Notification Act, and enacted the Alabama Sex Offense
Registration and Community Notification Act ("ASORCNA").
ASORNCA's interlocking restrictions deeply affect an
individual's life from where they may live to when they
may travel. While children convicted of sex offenses as

juveniles are subject to ASORCNA for 10 years, children convicted 'as adults' are subject to AORCNA for life.

Plaintiffs Randy Pennington and Hebert Stevens are two individuals who, while children, were convicted of sex offenders as adults. In September 2019, they filed their original complaint, and in October they filed an amended complaint naming as defendants, in their official capacities, persons occupying the following positions: Secretary of the Alabama Law Enforcement Agency; Director of the State Bureau of Investigation; Director of the Department of Public Safety; and Attorney General of Alabama.

Plaintiffs claim that, by enforcing ASORCNA's restrictions against them, and other children convicted as adults, defendants are violating the Eighth Amendment, the Ex Post Facto Clause, the Due Process Clause, and the Equal Protection Clause of the U.S. Constitution, as well as plaintiffs' right to reputation under the Alabama Constitution. They seek to assert their federal claims through 42 U.S.C. § 1983, and, relying on their federal

and state claims, they ask that the court enjoin defendants from enforcing ASORCNA. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 28 U.S.C. § 1367 (supplemental jurisdiction).

Now pending before the court is defendants' motion to dismiss. Defendants contend that plaintiffs' claims should be dismissed because they are untimely and barred by sovereign immunity and that, in any event, plaintiffs lack standing to bring their claims. Defendants also contend that the amended complaint should be dismissed for failing to state a claim. For the reasons discussed below, defendants' dismissal motion will be granted.

## I. BACKGROUND

### A. *ASORCNA*

#### 1. The Act's Restrictions

ASORCNA is comprised of 48 statutory sections that regulate adult, juvenile, and youthful sex offenders. *See* Ala. Code § 15-20A. Knowingly violating any of these

restrictions is usually a Class C felony.  *See*, *e.g.*, *id.*
15-20A-7(f), -10(j), -11(i), -12(f), -13(g).  Several of
ASORCNA's key provisions are as follows.

First, upon their release, sex offenders are required
to register with Alabama.   In doing so, they must
register, in person, with local law enforcement in *each*
county where they intend to reside, work, volunteer, or
go to school.  *See id.* § 15-20A-10(a)(1).   As part of
their registration, they must provide a comprehensive
list of government documents, as well as detailed
personal information ranging from their names and
addresses to their DNA.  *See id.* § 15-20A-7.   The
registrants must also notify local law enforcement, in
person, of any changes to their information, and reverify
most of their information, in person, every three months.
*See id.* § 15-20A-10.   Much of the information is made
public on a state website.  *See id.* § 15-20A-8.

Second, the registrants must always carry valid
driver's licenses or identification cards that designate
them sex offenders.  *See id.* § 15-20A-18.

Third, ASORCNA requires 'automatic community notification.' Immediately after a registrant's release from incarceration or upon notice of where the registrant "plans to establish, or has established, a fixed residence," law enforcement must notify the registrant's community of the registrant's presence. *Id.* § 15-20A-21(a). To provide notice, a "community notification flyer" containing a registrant's public registration information must be sent by "regular mail or hand delivered" to all residences within 1,000 to 2,000 feet of a registrant's address. *Id.* § 15-20A-21(a-b). Schools and childcare facilities within three miles of a registrant's address must also be notified. *See id.* Additional notification beyond the flyers may also be given by "any other method reasonably expected to provide notification." *Id.* § 15-20A-21(b).

Fourth, ASORCNA restricts where registrants may reside. They are generally prohibited from establishing or maintaining residences within 2,000 feet of their victims, the victims' immediate families, as well as any

5

schools, childcare facilities, or "resident camps." *Id.*
§§ 15-20A-11(a-b).  If registrants become unhoused, they
must notify local law enforcement, in person.  They are
then required to re-report weekly, in person, their
personal information; where they resided the past week;
and where they plan to reside the coming week.  *See id.*
§§ 15-20A-12 (a-d).

Fifth, registrants are prohibited from residing with
or conducting overnight visits with a minor unless that
minor is a 'close relative'.  *See id.* § 15-20A-11(d).
But the exception for close relatives does not apply if
the registrant has had or is in the process of having his
parental rights terminated.  *See id.*  The exception also
does not apply if the registrant was convicted of a sex
offense that involved: "forcible compulsion" of a minor;
a minor who was the registrant's close relative; a minor
who resided with the registrant; or a child under 12.
*See id.; id.* §15-20A-4(2).

Sixth, registrants have limiations on where they
may work or volunteer.  They may not work or volunteer

at places that primarily serve children and at amusement parks or water parks. *Id.* § 15-20A-13(a). They also may not work or volunteer anywhere within 2,000 feet of a school or childcare facility," *id.* § 15-20A-13(b), or 500 feet of a "playground, park, athletic field or facility, or any other business or facility having a principal purpose of caring for, educating, or entertaining minors," *id.* § 15-20A-13(c).

Seventh, before they travel, registrants must notify law enforcement, in person, and complete and sign a "travel notification document." *Id.* § 15-20A-15.

Finally, ASORCNA imposes various restrictions related to loitering and entering K-12 school property or attending K-12 school events. Registrants convicted of sex offenses involving a minor are prohibited from loitering within 500 feet of "property on which there is a school, childcare facility, playground, park, athletic field or facility, school bus stop, college or university, or any other business or facility having a principal purpose of caring for, educating, or

entertaining minors." *Id.* § 15-20A-17(a)(1).  Those registrants also may not enter K-12 school property "while school is in session" or attend any K-12 school activity, unless they follow certain procedures.  In essence, prior to their attendance they must notify the appropriate school administrator.  *Id.* § 15-20A-17(b)(1).  And once they arrive, registrants must notify the appropriate school administrator, as well as comply with any procedure created to monitor the them during their presence.  *See id.*

### 2.  How Long Individuals Are Subject to ASORCNA

Alabama law differentiates how children and adults are criminally tried, which in turn affects how long an individual is subject to ASORCNA.  Generally speaking, under Alabama law, individuals under 19 are children and individuals 19 and older are adults.  *See* Ala. Code § 12-15-102(1), (3).  Children charged with committing a crime are usually tried as 'juveniles' in 'juvenile court' and adults are tried as 'adults' in 'criminal

court.' *See id.* § 12-15-114, -116. But if there is probable cause to believe that a child committed a crime when the child was 14 years or older, the child's case may be transferred to criminal court. *See id.* § 12-15-203. Prior to transfer, a juvenile court judge must decide whether transfer is appropriate after considering various factors including: the nature of the alleged offense; past treatment efforts and the child's response to them; the interests of the community and the child; and the child's record of delinquency, demeanor, and level of maturity. *See id.* § 12-15-203(d). A child, whose case is transferred to adult criminal court and for whom the alleged crime "involves moral turpitude or is subject to a sentence of commitment for one year or more," may seek 'youthful offender' status.[1] *Id.* § 15-19-1.

How long individuals are subject to ASORCNA depends on whether they were convicted as a juvenile, youthful

---

1. Children granted youthful offender status waive their right to a jury trial. *See Raines v. State*, 294 Ala. 360, 363 (1975). And, in exchange, if convicted, they will face a less severe punishment than they would if they were convicted as adults. *See id.*

offender, or adult. *See* Ala. Code § 15-20A-3. Individuals convicted as juveniles are subject to ASORCNA for 10 years after their release and individuals convicted as adults are subject to ASORCNA for life. *See id.* §§ 15-20A-3(b), (d). Youthful offenders are treated as either adults or juveniles. In particular, youthful offenders who were already convicted when ASORCNA took effect are treated as adults, whereas youthful offenders not yet convicted when it took effect are treated as juveniles. *See id.* § 15-20A-3(f).

## *B. The Plaintiffs*

The plaintiffs in this case are Randy Pennington and Herbert Stevens. In 1983, when Pennington was 16 years old, he had sex with a married 16-year-old girl, and as a result her husband reported him for rape. He later pled guilty to first-degree sex abuse. In 1996, Stevens was reported for statutory rape when he was 17 years old, and he pled guilty to second-degree rape in 1997. While plaintiffs were children when they committed these sex

offenses, their cases were transferred to criminal court, and they were convicted as adults. As a result, they have been subject to Alabama's various sex-offense-registration schemes since their respective releases from incarceration.

When ASORCNA took effect in July 2011, plaintiffs became subject to its new onerous restrictions. As of the filing on the amended complaint in this case, they "are among the approximately 250 Alabama residents who were charged with sex offenses as children but tried and convicted as adults, served their time in jail or prison," and will be subject to ASORCNA for life. Amend. Compl. (Doc. 12) ¶3.

The restrictions imposed by ASORCNA and its predecessors have posed a variety of challenges in plaintiffs' lives. Both of them have previously been convicted for violating either ASORCNA or its predecessor. Moreover, the restrictions have led to Pennington's continued contact with law enforcement, barriers to living in his family home, financial

upheaval, issues interacting with his grandchildren, and obstacles in his employment and religious practice. For example, Pennington was demoted after his employer learned of his registration status. Additionally, the restrictions have interfered with Stevens's employment, ability to live with his family, religious practice, and participation in his children's lives. For example, Stevens was barred from his son's basic military training graduation. He has also been kept from participating in his two younger children's school and extracurricular activities.

## II. DISCUSSION

### A. Motion-To-Dismiss Standard

Defendants bring a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Under the circumstances presented here, the standard is the same under Rule 12(b)(1) and Rule 12(b)(6): the court

accepts plaintiffs' factual allegations as true and construes the complaint in their favor. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993); Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

## B. Sovereign Immunity

The court will begin by looking to whether any of the defendants are entitled to Eleventh Amendment immunity against any of plaintiffs' claims. "Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). State officials, acting in their official capacities, are cloaked with a State's sovereign immunity. *See Gen. Oil Co. v. Crain*, 209 U.S. 211, 226 (1908). And, unless they are stripped of that cloak, any claims against them must be dismissed from federal court. *See id.*

## 1.  Ex Parte Young

While state officials, in their official capacities, are usually entitled to sovereign immunity, the Supreme Court, in *Ex parte Young*, 209 U.S. 123, 159-60 (1908), recognized an exception allowing federal claims for injunctive relief to be brought against state officials. The Court explained that when an official's conduct violates federal law, that official is stripped of the cloak of sovereign immunity, as the "state has no power to impart to [the official] any immunity from responsibility to the supreme authority of the United States." *Id.* at 160. Thus, to ensure the supremacy of federal law, and consistent with the traditions of equity, plaintiffs may ask a federal court to enjoin state officials from enforcing "state laws that are contrary to federal law." *Jackson*, 595 U.S. at 39; *see also Ex parte Young*, 209 U.S. at 160.

For the exception to apply, plaintiffs must demonstrate that "the state officer, by virtue of his office, has some connection with the enforcement of the

act." *Ex parte Young*, 209 U.S. at 157. "Whether [the connection] arises out of the general law, or is specially created by the act itself, is not material so long as it exists." *Id.*

Three out of the four defendants do not oppose the application of the *Ex parte Young* exception to them. The defendant who opposes its application, the Director of the Department of Public Safety, argues that plaintiffs have not established a sufficient connection between him and the challenged provisions. He concedes that he enforces several provisions such as those requiring sex offenders to have drivers' licenses designating them as sex offenders, *see* Ala. Code § 15-20A-18(b), but argues that plaintiffs have not explained why his enforcement of those provisions is unconstitutional.

The court rejects this defendant's argument. For starters, plaintiffs specifically challenge the drivers' license provisions as unduly burdensome. They also broadly assert that enforcing any of ASORNCA's restrictions (including the license provisions) against

them is unconstitutional.  As this defendant enforces the
license provisions, plaintiffs established a sufficient
connection between him and the enforcement of ASORCNA for
the *Ex parte Young* exception to apply.


## 2.  State Claim

In addition to asking for defendants to be enjoined
based on violations of federal law, plaintiffs seek an
injunction based on a violation of Alabama law.

However, defendants are entitled to Eleventh
Amendment immunity against plaintiffs' state claim.
Unlike when officials are enjoined for violations of
federal law, "[a] federal court's grant of relief against
state officials on the basis of state law" does not uphold
the supremacy of federal law.  *Pennhurst State Sch. &
Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).  Rather, it
is an intrusion on state sovereignty that "conflicts
directly with the principles of federalism that underlie
the Eleventh Amendment."  *Id.*  Consequently, while the

*Ex parte Young* exception applies to federal claims, it does not apply to state claims.

In response, plaintiffs argue that their state claim is not barred because federal courts can exercise pendent jurisdiction over state claims.  This argument confuses the court's ability to exercise pendent or supplemental jurisdiction over certain *claims*, with whether certain *parties* are immune to suit from those claims.  Here, even though the state claim is pendent to the federal claims, the parties being sued are immune to suit from that claim. *See Terrell v. United States*, 783 F.2d 1562, 1566 (11th Cir. 1986).

## C. Federal Claims

Next, the court turns to plaintiffs' federal claims.

### 1.  Eighth Amendment Claim

Relying on the Eighth Amendment, the plaintiffs contend that the "automatic imposition of lifetime registration and notification on children tried as adults

and convicted of a sex offense" constitutes cruel and unusual punishment. Amend. Compl. ¶120. More specifically, they claim that, before imposing ASORCNA's lifetime restrictions on a child, Alabama must individually determine the child's risk of recidivism.

Defendants respond by arguing that the Eighth Amendment claim should be dismissed pursuant to subpart (b)(1) of Rule 12 of the Federal Rules of Civil Procedure for lack of standing and because it is untimely. They further argue that this claim should be dismissed pursuant to subpart (b)(6) of Rule 12 for failure to state a claim. Ultimately, the court need not determine whether plaintiffs have standing or stated a claim because their Eighth Amendment claim is untimely. *See Matar v. TSA*, 910 F.3d 538, 541 (D.C. Cir. 2018) (finding a court may decide timeliness before standing).

Plaintiffs brought their claims pursuant to § 1983, which borrows the "statute of limitations governing personal injury actions in the state where the § 1983 action [was] brought." *McNair v. Allen*, 515 F.3d 1168,

1173 (11th Cir. 2008).  This case was brought in Alabama, where the applicable statute of limitations is two years.  *See* Ala. Code § 6-2-38(l).  The two-year period begins running when a claim 'accrues,' which occurs when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his [or her] rights." *Rozar v. Mullis*, 85 F.3d 556, 561-62 (11th Cir. 1996)).  In other words, a claim does not "accrue until [a] plaintiff knows or has reason to know that he [or she] has been injured" and "who has inflicted the injury." *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987).  In determining whether the two-year period expired, each claim is analyzed separately, and claims brought after the period expired usually must be dismissed as 'untimely.' *See Doe as Next Friend of Doe #6 v. Swearingen*, 51 F.4th 1295, 1305 (11th Cir. 2022).

For § 1983 claims based on the *Ex parte Young* exception, the plaintiff's injury is derived from an official's enforcement of an unconstitutional statute.

*See id.* at 1304.   Sometimes, enforcement is a one-time event, and at that point the injury occurs, and the clock begins running on the statute of limitations.   *See id.* at 1305.   Other times, officials repeatedly enforce the statute, and each enforcement creates a new injury, resetting the clock each time.   *See id.* at 1306.   And, on occasion, the ongoing threat of enforcement creates a 'continuing injury.'   *See id.* at 1308.

There are two types of continuing injuries.   The first type is when enforcement is a one-time event where a defendant violated the law, but the event's effects "linger into the present."   *Id.* at 1305.   In such cases, while there is a continuing injury, there is not a continuing violation, and so, the clock runs as it normally would for a one-time violation.   *See id.*   The second type is when there is a continuing injury caused by a continuing violation of the law.   In these cases, plaintiffs can invoke the "continuing violation doctrine" to freeze the clock in time, thereby permitting them to bring an otherwise untimely claim.   *Id.*

Here, plaintiffs argue that their Eighth Amendment claim is timely because it arises out of a continuing violation. On the contrary, this case involves a continuing injury, but not a continuing violation. As stated, their Eighth Amendment claim is that, before imposing ASORCNA's lifetime restrictions on a child, Alabama must individually determine the child's risk of recidivism. Their claim is, therefore, based on a one-time event: when they were designated as adult sex offenders and made subject to ASORCNA for life without an individualized inquiry. *See id.* at 1310. The fact that they are still subject to ASORCNA is a lingering effect of the violation. *See id.* Since they were designated as adult sex offenders under ASORCNA in July 2011, they needed to bring this claim by July 2013, and, as it was fied in September 2019, it will be dismissed as untimely.[2]

_____

2. If the Eight Amendment claim had been timely, this court, relying substantially on *McGuire v. Marshall*, 50 F.4th 986 (11th Cir. 2022), would still dismiss it on the merits for, essentially, the same reasons given later for the dismissal of the *ex post facto claim* on the merits.

## 2. Ex Post Facto Claim

The court will now examine plaintiffs' ex post facto claim.   They assert that, because their convictions predate ASORCNA's enactment, imposing its restrictions on them is retroactive punishment in violation the Ex Post Facto Clause.   Defendants again respond by arguing plaintiffs' claim should be dismissed for lack of standing, as untimely, and for failure to state a claim.

### a. Timeliness

As previously discussed, there is a two-year statute of limitations for § 1983 claims brought in Alabama.   So, after a claim accrues, a plaintiff has two years to file it, unless it arises out of a continuing violation. Defendants contend that plaintiffs' two years expired in July 2013--two years after ASORCNA took effect. Defendants submit that because this claim was filed six years later, it should be dismissed as untimely.

Defendants mistakenly conflate when a law takes effect with when an injury occurs.   As already stated,

for claims brought under the *Ex parte Young* exception, it is the enforcement of a statute that causes the injury. Sometimes enforcement is a single event coinciding with when a law takes effect, but other times enforcement occurs later, repeatedly, or is ongoing.

Plaintiffs' ex post facto claim is timely because defendants' ongoing enforcement of ASORCNA results in a continuing violation of law, which prevents the statute of limitations from running. *See Swearingen*, 51 F.4th at 1308. Plaintiffs allege they suffer a continuing injury due to the ongoing restraints that ASORCNA imposes on them. For example, the residency restrictions have prevented them from residing where they would like for fear of criminal prosecution. Assuming that ASORCNA violates the Ex Post Facto Clause, the court concludes that defendants' "ongoing threat of enforcement continues to violate [plaintiffs'] rights each time [plaintiffs] forego an opportunity out of fear of enforcement." *Id.* at 1309.

Still, defendants contend that the continuing violation doctrine should not apply because, when ASORCNA took effect in 2011 plaintiffs "knew or should have known [they] were subject to a retroactive punishment." Defs.' Mot. Dismiss (Doc. 14) at 29.  In essence, defendants assert the defense of 'laches.'  *See Swearingen*, 51 F.4th at 1308 & n.3 (treating defendants' argument as equivalent to laches).  Similar to how a statute of limitations limits how long a plaintiff has to bring a legal claim, laches limits the amount of time the plaintiff has to bring a claim for equitable relief--such as the injunction plaintiffs seek here.  *See Costello v. United States*, 365 U.S. 265, 282 (1961).  Laches applies when there is "proof of (1) lack of diligence by the party against whom the defense is asserted, *and* (2) prejudice to the party asserting the defense."  *Id.* (emphasis added).  As defendants have not asserted that they would be prejudiced, laches does not bar plaintiffs' claim.  *See Swearingen*, 51 F.4th at 1308 & n.3.

### b. Standing

The court now turns to whether plaintiffs have standing to bring their ex post facto claim. "Article III of the U.S. Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Id.*

To establish Article III standing, plaintiffs must prove three elements: (1) 'injury in fact'; (2) causation; and (3) redressability. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)). Moreover, "'plaintiffs must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'" *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). Because plaintiffs are asking for an injunction, they must show that their

alleged injuries will likely recur due to a defendant's actions. *See id.* at 59.

First, plaintiffs established that they suffered an injury in fact, that is, "an invasion of a legally protected interest" that is concrete and particularized, as well as actual or imminent. *See Lujan*, 504 U.S. at 560. If ASORCNA imposes a criminal penalty, subjecting plaintiffs to it has deprived them, and will continue to deprive them, of their legal right against retroactive punishment. *See Collins v. Youngblood*, 497 U.S. 37, 41-46 (1990).

Second, plaintiffs have demonstrated causation, or that their asserted injury is "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. Plaintiffs' injury is traceable to defendants' conduct as they collectively enforce ASORCNA.

Finally, plaintiffs have established redressability, in other words, that their "injury [would likely] be

26

'redressed by a favorable decision.'"  *Id.*  If they were granted an injunction, defendants would no longer be permitted to enforce ASORCNA against plaintiffs.

Nevertheless, defendants make several arguments as to why plaintiffs do not have standing.  Defendants begin by arguing that Stevens does not have standing because he is eligible for relief from ASORCNA's requirements under the statute itself.  But defendants are mistaken; the availability of alternative relief does not deprive a plaintiff of standing.  *See FEC v. Cruz*, 596 U.S. 289, 298 (2022).

Next, defendants contend that, even if plaintiffs have standing to challenge some of ASORCNA's provisions, they do not have standing to challenge all of its provisions.  For example, defendants argue that plaintiffs do not have standing to challenge the homelessness provisions because they are not currently unhoused.  However, defendants misunderstand the nature of the injury in plaintiffs' ex post facto claim.  The injury for this claim is derived from an increase in the

punishment *permissible* under the asserted ex post facto law, regardless of whether the punishment is *executed*. *See Lindsey v. Washington*, 301 U.S. 397, 401 (1937).  As plaintiffs assert that ASORCNA's restrictions increase the punishment permissible for their past conduct, they have adequately alleged an injury in fact--regardless of whether they are likely to be jailed for a violation.

### c. Ex Post Facto Clause

The court will now discuss the merits of plaintiffs' ex post facto claim.  Plaintiffs assert that they were both convicted decades prior to ASORCNA's enactment. Correspondingly, they submit that imposing ASORCNA's new restrictions on them retroactively punishes them for conduct for which they were already punished, in violation of the Ex Post Facto Clause.  Defendants respond by arguing that ASORCNA is a civil law, and thus does not fall within the scope of the Clause.

The Ex Post Facto Clause prohibits States from passing laws that retroactively impose new punishment on

an individual for past conduct. *See Collins*, 497 U.S. at 42. Because the Clause applies to only criminal laws, not civil ones, the court must decide whether a challenged law is criminal before deciding whether any punishment is retroactive. *See id*.

When deciding whether a law is criminal or civil, the court "appl[ies] a two-part 'intent-effects' test." *McGuire v. Marshall*, 50 F.4th 986, 1001 (11th Cir. 2022). At step one, the court determines whether the legislature preferred for the law to be considered criminal or civil. *See id.* Given plaintiffs concede ASORCNA was intended to be civil, the court will move directly to step two.

At step two, the court determines whether a law "is 'so punitive either in purpose or effect as to negate' the legislature's intent to deem it civil." *Id.* (quoting *Smith v. Doe*, 538 U.S. 84, 93 (2003)). When determining whether a law's effects are sufficiently punitive to render it criminal, the court considers at least five factors including whether the law: (1) resembles historical or traditional forms of punishment; (2)

"promotes the traditional aims of punishment"; (3) "imposes an affirmative disability or restraint"; (4) "has a rational connection to a nonpunitive purpose"; or (5) "is excessive with respect to [its nonpunitive] purpose." *Smith,* 538 U.S. at 97. "Because [courts] ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 92 (citations and internal quotation marks omitted).

This court notes that, while this motion to dismiss was pending, the Eleventh Circuit Court of Appeals decided *McGuire v. Marshall, supra*. *McGuire* concluded that, when applied to adults convicted of sex offenses, many of ASORCNA's restrictions are civil. *See* 50 F.4th at 994 & n.11. While the opinion set aside whether ASORCNA's restrictions would be a criminal penalty if applied to 'juveniles,' *see id.* at 994 n.11., much of the opinion's reasoning applies with equal force to 'children convicted as adults.' Bound by precedent, and having

30

considered the relevant factors, this court concludes that ASORCNA's effects, as applied to children convicted as adults, do not render the law criminal.[3]

*i. ASORCNA's Restrictions Resemble Some Traditional Forms of Punishment.*  This first factor's "historical survey can be useful because a State that decides to punish an individual is likely to select a means deemed punitive in our tradition, so that the public will recognize it as such." *Smith*, 538 U.S. at 97.  While the "restriction need not be identical to a traditional punishment for this factor to be satisfied," it must bear more than an "initial resemblance" to the punishment. *McGuire*, 50 F.4th at 1008.

First, plaintiffs submit that ASORCNA resembles probation and parole.  While the two punishments are technically distinct, they are closely related. *See id.* at 1017 & n.30.  Probation is a criminal sentence, where individuals are released to the community. *See id.*  In

_____

3.  The court expresses no opinion on whether ASORCNA is criminal when applied to children convicted as juveniles.

31

contrast, parole is not a sentence, but a process whereby incarcerated persons are released early from their sentence of imprisonment. *See id.* Both punishments restrict an individual's liberty by imposing "a series of mandatory conditions, which may include requiring a person to report regularly to law enforcement and to comply with other conditions including maintaining employment, obtaining consent from a probation or parole officer before moving or changing jobs, and abstaining from drugs or alcohol." *Id.* at 1017.

This court is bound by the Eleventh Circuit precedent to conclude that ASORCNA's restrictions do not sufficiently resemble probation or parole. *McGuire* concluded that ASORCNA's reporting requirements and travel restrictions, as applied to adults, do not sufficiently resemble probation or parole for two reasons. *See id.* at 1017-18. The first reason was that the reporting requirements do not "not entail the type of supervision that is a hallmark of probation and parole," such as being "required to maintain employment,

32

obtain consent before moving or changing jobs, or abstain from drugs or alcohol." *Id.* The second reason was that "the consequences of violating [ASORCNA] are different from the consequences of probation and parole violations." *Id.* at 1017-18. When individuals violate a term or condition of probation or parole, they "may be imprisoned for the original crime." *Id.* at 1018. In contrast, when sex offenders do not comply with ASORCNA's requirements, they "may be subjected to a criminal prosecution for violation of ASORCNA, separate and apart from [their] original offense." *Id.*

*McGuire*'s reasons for why some of ASORCNA's restrictions do not sufficiently resemble probation or parole apply with equal force to ASORCNA's remaining provisions. For one, while ASORCNA's provisions restrict where offenders may reside, work, or volunteer, they are not required to obtain permission before establishing a residence, working, or volunteering. Nor are they required to have a job or abstain from using drugs or alcohol. Moreover, violations of the other provisions

also give rise to a criminal prosecution separate from an offender's original offense.

Furthermore, the circuit's reasons for why the restrictions do not resemble probation or parole are unaffected by an offender's age--so, its reasons are equally applicable to children convicted as adults.

Second, plaintiffs submit that ASORNCA, and especially its community notification and drivers' license provisions, resemble 'public shaming.' "Some historical punishments, like forcing an offender to wear a sign broadcasting his offense, were meant to inflict public disgrace." *Id.* at 1022. For example, as punishment "a murderer might [have been] branded with an 'M,' and a thief with a 'T.'" *Smith*, 538 U.S. at 98. These punishments are known as public shaming.

Whether ASORCNA sufficiently resembles public shaming is a "difficult question." *McGuire*, 50 F.4th at 1023. Some of ASORCNA's provisions are similar to public shaming in certain respects, but dissimilar in others. For example, the community notification provision

34

requires flyers with an offender's information be sent to their neighbors, regardless of whether the neighbors request the information. *See* Ala. Code §§ 15-20A-21(a-b). This process is similar to how branding a murderer with an M would automatically warn the public that the branded person is dangerous while simultaneously shaming that person. *See McGuire*, 50 F.4th at 1023. Yet, the notification provision does not require the "face-to-face shaming" usually associated with public shaming "because a registrant ordinarily is not present when his neighbors receive the notice disclosing his [or her] status as a sex offender." *Id.* (citing *Smith*, 538 U.S. at 98) (quotation marks omitted). Following *McGuire*'s lead, the court will leave this "difficult question ... for another day," because, even if ASORCNA sufficiently resembled public shaming, plaintiffs would still not meet their "heavy burden to show that [ASORCNA] is punitive in purpose or effect" when this factor is considered alongside the remaining ones. *Id.*

Third and finally, plaintiffs assert that ASORCNA, and especially its residency and employment restrictions, resemble 'banishment.' Banishment is a historical punishment where criminal offenders were banished or exiled, "after which they could neither return to their original community nor, reputation tarnished, be admitted easily into a new one." *Smith*, 538 U.S. at 98.

The Eleventh Circuit has discussed at least two ways that a plaintiff may demonstrate that a punishment sufficiently resembles banishment. First, a plaintiff may show total banishment, in that those affected by the challenged law are "totally prohibited from entering [any] exclusion zones." *McGuire*, 50 F.4th at 1009. Second, a plaintiff may establish a partial exclusion, that is, that those affected by the challenged law are prohibited from entering exclusion zones for "some, but not all, purposes." *Id*. To establish a partial exclusion, a plaintiff must prove that because of the exclusion zones, excluded individuals have an insufficient opportunity to pursue the activities they

were prohibited from undertaking in the zones.  *See id.* at 1010.  For example, they may be able to demonstrate that, because of residency restrictions, they do not have a sufficient opportunity to find a home.

The court notes that, while *McGuire* found that ASORCNA's residency and employment restrictions do not sufficiently resemble banishment, the case was in a very different posture.  *McGuire* was on appeal from a judgment issued after a bench trial, *see id.* at 992-93, and as a result, the circuit deferred to the district court's factual determinations.  *See id.* at 1010.  Those determinations were key to *McGuire*'s conclusion that there were sufficient housing and employment opportunities available to offenders "notwithstanding the exclusion zones."  *Id.*  Moreover, the circuit explained that the plaintiff did not point "to any evidence that the available houses or jobs are so undesirable that they should not be counted."  *Id.*

In contrast, the present case has not proceeded to trial; rather, it is on a motion to dismiss.

37

Correspondingly, the amended complaint's allegations must be viewed in the light most favorable to plaintiffs. When viewed in that light plaintiffs have adequately pled that ASORCNA's restrictions, especially its residency and employment provisions, sufficiently resemble banishment. In particular, plaintiffs may be able to prove that because of the exclusion zones, registrants who were children convicted as adults, do not have employment or housing opportunities that are "sufficiently open" to them. *Id.* Yet again, even if ASORCNA bears some resemblance to banishment, that resemblance alone is insufficient to render ASORCNA criminal. *See id.* at 1023.

*ii. ASORCNA's Restrictions Do Not Substantially Promote the Traditional Aims of Punishment.* The Eleventh Circuit has explained that "[t]he traditional aims, or theories, of punishment are deterrence and retribution." *Id.* at 1012 . "The deterrence theory of punishment refers to 'the prevention of criminal behavior by fear of punishment.'" *Id.* (quoting *Black's Law Dictionary* (10th

ed. 2014)).  In contrast, "[t]he retribution theory of punishment reflects that it is 'fitting and just that one who has caused harm to others should himself suffer for it.'"  *Id.* at 1012 (quoting Wayne R. LaFave, *Substantive Criminal Law* § 1.5(a)(6) (2d ed. 2003)).

While plaintiffs concede that ASORCNA does not promote deterrence, they argue that its restrictions promote two other aims of punishment: retribution and incapacitation.  They submit that ASORCNA promotes retribution because it automatically imposes restrictions based solely on an individual's criminal conviction.  In other words, ASORCNA's restraints are assumed to be a fitting and just response to being convicted of a sex offense.  They also contend that "the statute's 'very goal is incapacitation insofar as it seeks to keep sex offenders away from opportunities to reoffend.'"  Pls.' Resp. (Doc. 25) 36-37 (quoting *Does #1-5 v. Snyder*, 834 F.3d 696, 704 (6th Cir. 2016)).  Yet, even if ASORCNA promotes these aims, it does not do so

to the extent required to override the legislature's intent for the law to be considered civil.

*McGuire* already concluded that ASORCNA has a limited "retributive effect," given that its "restrictions are imposed on registrants solely because of their earlier criminal convictions." *McGuire*, 50 F.4th at 1013. But the circuit explained that, while "Alabama imposes the restrictions on registrants as a class without making individualized risk assessments ... '[t]he *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences.'" *Id.* at 1013 (quoting *Smith*, 538 U.S. at 103). *McGuire* found that, because ASORCNA's regulatory consequences are reasonably related to nonpunitive purposes and not excessive, ASORCNA's limited retributive effect does not render it criminal. *See id.* at 1013, 1019, 1021, 1023.

Moreover, while ASORCNA's loitering, employment, and residency restrictions further incapacitation to some extent, ASORCNA's pursuit of incapacitation is

40

insufficient to render it punitive.[4]  That insufficiency is highlighted by the fact that many civil laws promote incapacitation to a greater extent, such as civil confinement laws, without implicating the Ex Post Facto Clause.  *See Kansas v. Hendricks*, 521 U.S. 346, 363 (1997).

   *iii. ASORCNA's Restrictions Impose an Affirmative Disability or Restraint.*  "In considering whether the legislative scheme imposes an affirmative disability or restraint, [the court] ask[s] 'how the effects of the [law] are felt by those subject to it.'"  *McGuire*, 50 F.4th at 1011 (quoting *Smith*, 538 U.S. at 99–100).  "If the restraint imposed is only 'minor and indirect, its

---

   4. It is unclear whether the Eleventh Circuit considers incapacitation a traditional aim of punishment. While other circuits consider incapacitation a traditional aim, *see, e.g., Does #1-5 v. Snyder*, 834 F.3d 696, 704 (6th Cir. 2016), some Eleventh Circuit caselaw indicates that only deterrence and retribution are traditional aims, *see McGuire*, 50 F.4th at 1012.  The court need not decide whether incapacitation is a traditional aim of punishment, because, either way, ASORCNA's pursuit of the aim is insufficient to render the law criminal.

effects are unlikely to be punitive.'" *Id.* (quoting *Smith*, 538 U.S. at 99–100).

*McGuire* already decided whether many of ASORCNA's provisions are an affirmative disability or restraint when imposed on adults. The opinion concluded that ASORCNA's residency and employment restrictions, as well as some of its reporting requirements are affirmative disabilities or restraints. *See id.* at 1011, 1018. In contrast, ASORCNA's travel and community notification requirements were found not to be affirmative disabilities or restraints. *See id.* at 1021–23. The parties do not make any arguments responsive to whether ASORCNA imposes an affirmative disability or restraint aside from those addressed in *McGuire*, and there is no reason to believe that the restrictions would be less of a disability or restraint when applied to children rather than adults.

*iv. The Affirmative Disabilities or Restraints That ASORCNA Imposes Have a Rational Connection to a Nonpunitive Purpose.* The Supreme Court has explained

42

that this fourth factor is one of the most, if not the most, significant factor. *See Smith*, 538 U.S. at 102. When determining whether any disabilities or restraints have a rational connection to a nonpunitive purposes, the court's job is not to weigh the evidence or the sufficiency of the allegations as to whether the disabilities or restraints are likely to achieve the nonpunitive purpose. *See McGuire*, 50 F.4th at 1014. Instead, the court determines whether the legislature could have rationally concluded that the restrictions might promote a nonpunitive aim. *See id.*

*McGuire* already determined that most of the challenged restrictions are rationally related to a nonpunitive purpose. The employment and residency restrictions "are a reasonable way to protect children from future sex offenses," as they limit "registrants' access to public areas that children frequent" to reduce the risk that sex offenders will recidivate and target those children. *Id.* at 1013–14. Community "notification 'has a legitimate nonpunitive purpose of public safety,

which is advanced by alerting the public to the risk of
sex offenders in their community.'" *Id.* at 1024 (citing
*Smith*, 538 U.S. at 102-03). Requiring registration and
travel notification promotes public safety by ensuring
offenders remain in contact with law enforcement, so that
they can better verify an offender's information and keep
track of an offender's location. *See id.* at 1019, 1021.

Those provisions that *McGuire* did not discuss, such
as the loitering, K-12 school, drivers' license, and
overnight restrictions are all rationally related to
nonpunitive purposes. Restricting offenders' ability to
be in close proximity to children--such as in the case
of the loitering, K-12, and overnight restrictions--is
rationally related to ensuring those child safety and
reducing the risk of recidivism. *See Windwalker v.
Governor of Alabama*, 579 F. App'x 769, 771-73
(11th Cir. 2014). Furthermore, the legislature could
have rationally speculated that the drivers' license
provision promotes public safety by allowing law

enforcement to quickly identify sex offenders, especially those in close proximity to children.

Plaintiffs respond by contending that ASORCNA's restrictions undermine its stated aim of public safety by making it more difficult for offenders to reintegrate into society. In particular, plaintiffs submit that the restrictions make finding stable jobs and housing difficult, which in turn makes it likelier that offenders will return to criminal activity. To support their argument, plaintiffs cite *Doe v. Miami-Dade County*, 846 F.3d 1180, 1186 (11th Cir. 2017).

While plaintiffs' argument highlights some tension in the Eleventh Circuit's caselaw, ultimately, it is *McGuire*, not *Doe*, that is essentially on point and thus binds this court, like it or not. For starters, *McGuire* specifically deals with ASORCNA. Moreover, as *McGuire* explains, the court's job is to determine whether the legislature could have rationally concluded that the law will further a nonpunitive aim; not weigh the evidence as to whether the law will likely achieve that aim. *See*

45

*McGuire*, 50 F.4th at 1014.  As already discussed, the legislature could have rationally concluded that ASORCNA's restrictions will promote their nonpunitive aims--even if the evidence indicates the opposite result is likely to occur.

   *v. ASORCNA's Affirmative Disabilities and Restraints are Not Excessive*.  The final factor inquires whether the statute's means fit its ends.  An affirmative disability or restraint "is not excessive so long as the State has chosen a reasonable means to achieve its nonpunitive objective."  *Id.* at 1015.

   *McGuire* already concluded that most of the challenged restrictions are not excessive.  Those provisions that *McGuire* did not address, such as the loitering, K-12 school, drivers' license, and overnight restrictions, all use reasonable means to achieve their nonpunitive purposes.  The loitering provisions apply to only a subclass of sex offenders who were: (1) convicted of sex offenses involving minors; (2) within 500 feet of places likely to have a high concentration of children; and (3)

have no legitimate purpose for being there or were first asked to leave by an authorized person. *See* Ala. Code. § 15-20A-17(a) (1-2). Excluding those offenders from that narrow category of areas for those limited purposes laid is a reasonable means of protecting child safety and reducing the risk of recidivism. *See Windwalker*, 579 F. App'x at 772-73. ASORCNA's notice and monitoring procedures for when those offenders enter K-12 schools or attend K-12 school activities, are also reasonably calculated to achieve those same nonpunitive objectives.

It is a closer question as to whether the overnight provision is excessive; however, plaintiffs did not provide a sufficient basis for the conclusion that the provision is so excessive as to render the law punitive. The overnight provisions apply more broadly to all offenders rather than just those convicted for sex offenses involving minors. *See* Ala. Code § 15-20A-11(d). While this makes them less targeted than the loitering provisions, a legislature is not required the "best choice possible," they just must make a reasonable one.

*Smith*, 538 U.S. at 105.  And given that, except in a handful of circumstances, offenders can still reside with minors that are close relatives, the legislature's restrictions were reasonably calculated to achieve public safety and reduce recidivism.

As to the license provision, requiring offenders to carry identification designating them as 'sex offenders' borders on being excessive.  In essence, if police officers have an offender's license, they can just look up the offender's designation regardless of whether that designation is physically marked on the license.  *See McGuire v. Strange*, 83 F. Supp. 3d 1231, 1269 (M.D. Ala. 2015) (Watkins, J.), *aff'd in part*, *vacated in part, remanded sub nom. McGuire v. Marshall*, 50 F.4th 986 (11th Cir. 2022).  But, under Eleventh Circuit caselaw, given the limited non-physical nature of the disability and that there is some relationship between the provision and the non-punitive purpose of public safety, the license provision is not so punitive as to render ASORCNA criminal.  *See id.*

48

Nevertheless, plaintiffs make several arguments that *McGuire* did not address.  For starters, they assert that ASORCNA's provisions impose a stigma that creates unique obstacles to children such as: an increase in suicidality; interference with their education and social development; and a greater risk that they are subjected to violence.  Plaintiffs further assert that ASORCNA is excessive because it "ignores that children are less likely to recidivate than adults and generally have low recidivism rates."  Pls. Resp. (Doc. 25) 29.  But the Eleventh Circuit has already rejected both of these arguments with respect to a different sex-offender-registry law involving minors.[5]  *See United States v. W.B.H.*, 664 F.3d 848, 860 (11th Cir. 2011).

---

5. Plaintiffs also make their recidivism and unique obstacles arguments in their discussion of whether ASORCNA imposes a restraint and whether any restraint is rationally connected to a nonpunitive purpose.  However, both arguments go to a restraint's excessiveness; not its existence or rational connection to a nonpunitive purpose.  *See United States v. W.B.H.*, 664 F.3d 848, 860 (11th Cir. 2011) (discussing the arguments in relation to excessiveness).

Plaintiffs also contend that ASORCNA's restrictions are excessive because children convicted as adults will, on average, be subject to ASORCNA longer than adults convicted as adults. This argument is not unique to children convicted as adults, and so it does not distinguish this case from *McGuire*. For example, adults convicted in their 20s will, on average, be subject to ASORCNA longer than those convicted in their 60s. Legislatures need to draw lines, and those lines do not need to be the "best choice possible"; they just need only to be reasonable. *See Smith*, 538 U.S. at 105. And for the reasons provided, ASORCNA's lines are reasonable.[6]

---

6. Plaintiffs make a second similar argument, asserting that "ASORCNA sets people up to fail" because the longer they are subject to ASORCNA the likelier it is that they will violate its provisions. Pls.' Resp. (Doc. 25) 28. Yet, plaintiffs' argument references people more broadly, not just children, thus the argument does not distinguish this case from *McGuire*. Even if this argument were made specifically in reference to children, it would not distinguish this case from *McGuire*. Definitionally, any person regulated for longer, regardless of whether the State begins regulating them at 14 or 40, will have more chances to violate a regulation. And as already explained, legislatures must be able to draw reasonable lines when drafting

While this court is sympathetic to the claim that a lifetime of automatic community notification, registration, and strict employment, volunteering, residency, loitering, school, homelessness, and travel restrictions imposed on children convicted of sex offenses is punitive; Eleventh Circuit caselaw, chiefly *McGuire*, indicates otherwise.[7]

---

regulations, which the Alabama legislature has done in this case.

7. The court notes that *McGuire* appears to be at odds with many other federal circuit and state supreme court opinions concluding that other sex-offense-registration schemes, arguably less restrictive than ASORCNA, may violate the Ex Post Facto Clause. *See*, *e.g.*, *Prynne v. Settle*, 848 F. App'x 93 (4th Cir. 2021); *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016); *Nelson v. Town of Paris*, 78 F.4th 389 (7th Cir. 2023); *Doe v. State*, 167 N.H. 382 (2015); *State v. Letalien*, 985 A.2d 4 (Me. 2009); *Starkey v. Oklahoma Dept. of Corrections*, 305 P.3d 1004 (Okla. 2013); *Com. v. Baker*, 295 S.W.3d 437 (Ky. 2009); *People v. Betts*, 507 Mich. 527 (2021); *People ex rel. T.B.*, 489 P.3d 752 (Colo. 2021); *In re T.H.*, 913 N.W.2d 578 (Iowa 2018). *See also Doe v. Miller*, 405 F.3d 700, 723-26 (8th Cir. 2005) (Melloy, J., concurring in part and dissenting in part).

51

### 3. Procedural Due Process Claims

The court now turns to plaintiffs' two procedural due process claims. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the ... Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In other words, the State may not deprive individuals of their legal rights without adequate process. Generally, adequate process entails that an individual be given notice and the opportunity to be heard. *See id.* at 333. While the scope and timing of the hearing is flexible, its purpose remains the same: providing individuals an adequate opportunity to contest any facts material to whether they will be deprived of their rights. *See id.* at 333-334.

First, plaintiffs bring a general procedural due process claim. They assert that, by automatically subjecting them (and other children convicted as adults) to ASORCNA for life, the statute imposes an irrebuttable

presumption of dangerousness and fails to account for their individual circumstances.   They explain that ASORCNA's restrictions deprive them of their fundamental rights to informational privacy, direct their children's education, raise children, family integrity, and freely worship, as well as their legal (but not fundamental) rights to seek employment and establish a home.   They contend that they were deprived of these rights without adequate process because they were not given an individualized hearing to determine their dangerousness or account for their individual circumstances before the restrictions were imposed on them for life.

Second, plaintiffs bring a 'stigma-plus' claim, asserting that being subject to ASORCNA damages their reputation, which in turn deprives them of their previously referenced rights without adequate process.

Defendants again respond by arguing that both of plaintiffs' due process claims should be dismissed as untimely, for lack of standing, and for failure to state a claim.

### a. Timeliness

For a third time, defendants assert that plaintiffs' claims should be dismissed as untimely because they were filed six years after the statute of limitations expired. Plaintiffs respond by asserting that their claims are still timely because their injuries arise out of continuing violations. The court concludes that, while plaintiffs' general procedural due process claim is untimely, their stigma-plus claim is saved by the continuing violation doctrine.

As already stated, plaintiffs' general procedural due process claim is that defendants violated the Due Process Clause because they did not make an individualized inquiry before imposing ASORCNA's lifetime restrictions on plaintiffs. This claim encounters the same problem as their Eighth Amendment claim. That is, while they have shown that they have a continuing injury, they have not shown a continuing violation. The asserted violation was a one-time event

that occurred when they were initially designated as adult offenders and made subject to ASORCNA for life without an individualized inquiry; the fact that they are still subject to ASORCNA is a lingering effect of the violation. *See Doe as Next Friend of Doe #6 v. Swearingen*, 51 F.4th 1295, 1310 (11th Cir. 2022). Since they were designated as adult offenders under ASORCNA in July 2011, they needed to file this claim by July 2013; as it was filed over six years later, it will be dismissed as untimely.

However, plaintiffs' stigma-plus claim is based on a continuing violation, and is therefore timely. This claim is based on the theory that defendants' ongoing enforcement of ASORCNA harms their reputations, which in turn deprives them of their legal rights without due process. Given "plaintiffs' reputational injury depends on continuing enforcement actions taken by the [defendants] within the limitations period, ... the continuing violation doctrine applies." *Id.* at 1308. Defendants again respond by asserting the defense of

laches, but as already explained, since defendants do not assert prejudice, laches does not apply.


### b. Standing

Plaintiffs' have adequately alleged that they have standing to bring their stigma-plus claim. First, plaintiffs have established injury in fact. They assert that, by virtue of their ongoing registration status as well as the publication of their status, they suffer reputational damage. They explain that this reputational damage deprives them of various legal rights. For example, they contend that, due to their registration status, they are ostracized at church, which treatment interferes with their right to freely worship. And they assert that these legal rights were deprived without adequate process, since they were not given an individualized hearing. Taken together, these allegations establish an injury-in-fact. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 426-33 (2021); *see also Parsons v. U.S. DOJ.*, 801 F.3d 701, 711 (6th Cir. 2015).

Second, plaintiffs have established causation because defendants enforce ASORCNA's provisions including the stigmatizing license and registration provisions. Third, plaintiffs have stablished redressability. If a decision were entered in their favor, defendants would be required to remove plaintiffs from ASORCNA's registry, and cease enforcing ASORCNA's requirements against them. *See Doe v. DeWine*, 910 F.3d 842, 850-51 (6th Cir. 2018).

### c. Stigma-Plus Claim

The court will now turn to plaintiffs' stigma-plus claim. As previously discussed, to establish a Due Process Clause violation, plaintiffs must show that they were deprived of their legal rights. In *Paul v. Davis*, the Supreme Court concluded that, because there is no general federal right to reputation, "the infliction by state officials of a 'stigma' to one's reputation," by itself, does not deprive an individual of a legal right. 424 U.S. 693, 701-02, 10-12 (1976). Yet, the Court explained that, in some cases, the infliction of a

reputational injury may have the effect of depriving plaintiffs of their legal rights. *See id.* at 711-12. Claims based on that theory are called 'stigma-plus' claims, referring to the stigma *plus* some other legal right that the stigma interfered with.

To establish a stigma-plus claim, a plaintiff must demonstrate that: (1) an official injured the plaintiff's reputation; (2) the reputational injury altered or extinguished some other right or status previously recognized under state or federal law; and (3) the official imposed the stigma without providing the plaintiff with adequate process. *See id.* And, as already explained, adequate process requires the government to accord the plaintiff a hearing to contest any facts relevant to the state's decision to deprive an individual of their legal rights. *Mathews*, 424 U.S. at 332.

Here, plaintiffs contend ASORCNA's lifetime registration and community notification requirements for children convicted as adults impose a permanent stigma that "distinctly alters their existing rights to privacy,

to establish a home, to raise children, to obtain and maintain employment, and to worship." Amend Compl. ¶151. While plaintiffs concede that the government may, in some circumstances, establish a public sex-offense registry, they argue that, before doing so, the government must provide a hearing to determine whether children convicted as adults should be treated as adults for the purposes of registration. In essence, plaintiffs want the opportunity to contest whether those children are currently dangerous or are likely to recidivate.

This claim is controlled by *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003). There, Doe contended that a Connecticut sex offender statute deprived him of a liberty interest without due proces because it included him on the sex offender registry without, first, providing him with an opportunity to challenge whether he was currently dangerous. The court rejected his due process claim, stating that "due process does not entitle him to a hearing to establish a fact that is not material under the Connecticut statute." *Id*. at 7. The Court

explained: "[E]ven if [Doe] could prove that he is not likely to be currently dangerous, Connecticut has decided that the registry information of all sex offenders--currently dangerous or not--must be publicly disclosed. ... [A]ny hearing on current dangerousness is a bootless exercise." *Id.* at 7-8.  The Court further explained that, because "States are not barred by principles of 'procedural due process' from drawing such classifications," claims such as Doe's must ultimately be analyzed "in terms of substantive, not procedural, due process," *id.* at 8, and the Court did not have a "substantive due process claim" before it.  *Id.*

Here, similarly, the process plaintiffs seek--the opportunity to disprove that they are currently dangerous or that they are likely to recidivate--is irrelevant to whether they are subject to ASORCNA's provisions. Whether they are subject to ASORCNA's lifetime restrictions is based solely and categorically on their conviction, not their current dangerousness or likelihood of recidivism. *See* Ala. Code § 15-20A-3(a-b).  And they

already had "a procedurally safeguarded opportunity" to dispute the facts of their conviction at trial. *Doe*, 538 U.S. at 7.   Thus, regardless of whether they receive another hearing, they will be required to register--the action triggering the stigma and corresponding deprivation.   Consequently, "[u]nless [plaintiffs] can show that [ASORCNA's] *substantive* rule of law is defective (by conflicting with a provision of the Constitution), any hearing on current dangerousness is a bootless exercise." *Id.* at 7-8 (emphasis in original). And the court does not understand plaintiffs to be making a substantive due process claim here. *See generally Littlejohn v. Sch. Bd. of Leon Cnty.*, 2025 WL 785143, \_\_\_ F.4th \_\_\_ (11th Cir. 2025) (discussing the challenges of making a substantive due process claim).

Still, plaintiffs make two additional arguments in response.   They begin by asserting that this case is similar to *Doe v. Pryor*, 61 F. Supp. 2d 1224 (M.D. Ala. 1999) (Thompson, J.), where this court previously issued a preliminary injunction against

ASORCNA's predecessor, the Community Notification Act, based on a stigma-plus theory.  But this court's *Pryor* opinion was issued four years before the Supreme Court decided *Connecticut Department of Public Safety v. Doe*, which rejected a challenge to Connecticut's sex-offense registry based on the same theory plaintiffs advance here.  *See* 538 U.S. at 7-8.  This court is bound to follow the Supreme Court's decision*.*

Next, plaintiffs attempt to distinguish ASORCNA from the Connecticut statute in *Doe* on the ground that ASORCNA is more expansive and restrictive than the Connecticut statute.  But ASORCNA's scope is irrelevant to the procedure plaintiffs seek--the ability to contest whether they are dangerous or likely to recidivate.

### 4. Equal Protection Claims

Finally, the court will discuss plaintiffs' equal protection claims.  "The Equal Protection Clause directs that "'all persons similarly circumstanced shall be treated alike.'" *Plyler v. Doe*, 457 U.S. 202, 216, (1982)

(citing *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)).  But the mere fact that a State treats some individuals differently from others is not sufficient to establish a violation of the Clause.  Part of a legislature's job when enacting social and economic policies is to choose what class of individuals should receive a benefit or face a burden.  And "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

Usually, when legislatures make classifications there is little concern that their choices will deny individuals their right to equal protection. *See id.* at 313-14.  And to the extent that any risk exists, the ordinary political process may be expected to repeal any undesirable legislation. *See id.* As such, most laws are subject to the deferential 'rational-basis review,' and are almost always upheld. *See id*.

But, in some cases, a more-searching review is necessary.  For example, when laws classify individuals

based on certain 'suspect' classes, such as race, there is a concern that, due to a history of discrimination or barriers in accessing political power, the political process will break down. *See Plyler*, 457 U.S. at 216 n.14. And so, the risk that impermissibly discriminatory laws will be enacted or go unrepealed is magnified. *See id.* Similarly, when a law unequally burdens a fundamental right, there is a concern that a class of persons is being impermissibly denied a right fundamental to their participation in the political process or a core constitutional guarantee. *See id.* at 217 n.15. Consequently, when a law draws lines based on a suspect class or unequally burdens a fundamental right, it is subject to 'heightened scrutiny.' *See id.*

Here, plaintiffs make two arguments as to why "ASORCNA's differential treatment of children tried in juvenile court versus similarly situated children tried in adult court violates the Equal Protection Clause." Pls.' Resp. (Doc. 25) 68. First, they bring a 'fundamental-interests' claim, asserting that ASORCNA

unequally infringes on their fundamental rights to: travel; worship; privacy; family integrity; bring up children; and direct one's child's education. Second, they argue that, even if ASORCNA does not unequally infringe on their fundamental rights, it does not have a rational basis for its classification. For a final time, defendants contend that plaintiffs' claims should be dismissed as untimely, for lack of standing, and for failure to state a claim.

### a. Timeliness

The court will now decide whether plaintiffs' equal protection claims are timely. One last time, defendants assert that, because plaintiffs filed their claims over six years too late, they should be dismissed as untimely. On the contrary, both claims are timely because they are saved by the continuing violation doctrine.

First, plaintiffs' fundamental-interests claim is based on a continuing violation. They allege various continuing injuries, including that: they are required

to update their registration information every three months; their registration status limits their ability to participate in church activities; and ASORCNA's restrictions interfere with their opportunity to attend their children's or grandchildren's school events. If plaintiffs are correct on the merits, those injuries are caused by a continuing violation. In essence, the ongoing threat of enforcement causes plaintiffs to forgo their rights including their rights to: informational privacy, free worship, or direct their children's education. *See Swearingen*, 51 F.4th at 1309.

Second, plaintiffs' rational-basis claim is based on a continuing violation. They allege that the statute impermissibly discriminates against them by treating them differently from similarly situated children who were convicted as juveniles rather than adults. If plaintiffs' claim has merit, each day they faced the threat of enforcement of this discriminatory law would be part of a continuing violation of the Equal Protection Clause. *See Palmer v. Bd. of Educ. of Cmty. Unit Sch.*

*Dist. 201-U*, 46 F.3d 682, 683 (7th Cir. 1995) (discussing *Brown v. Board of Education,* 347 U.S. 483 (1954)).

And, for a final time, laches is inapplicable to both claims, given defendants have not established prejudice.


### b. Standing

Defendants assert once more that plaintiffs lack standing to bring their claims; defendants are wrong.

*i. Standing to Bring Fundamental-Interests Claim.* Plaintiffs have standing to bring their fundamental-interests claim as a pre-enforcement challenge. When state officials threaten to enforce an unconstitutional statute against a plaintiff, that plaintiff is not required to wait until enforcement occurs to establish standing. *See Driehaus*, 573 U.S. at 158. Rather, a plaintiff has standing when "the threatened enforcement" is "sufficiently imminent." *Id.* at 159.

In a pre-enforcement challenge, a plaintiff may satisfy the injury-in-fact requirement by alleging: (1)

"an intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) that the challenged statute limits their ability to engage in that conduct; and (3) they face a credible threat of prosecution under the statute. *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979).

Plaintiffs have satisfied the injury-in-fact requirement for their claim. Here, they have alleged several distinct ways ASORCNA limits conduct arguably affected with a constitutional interest that they wish to engage in. They both are forced to register with law enforcement and have their personal information and status as a sex offender made available to the public against their wishes. They both are also ostracized at church due to their registration status, and assert that they have limited their church attendance due to that ostracization. Stevens asserts that ASORCNA's restrictions, presumably the loitering and volunteering restrictions, interfere with his ability to attend church "because his church has a daycare and activities that

involve children." Amend. Compl. ¶47. He also
represents that due to ASORCNA's restrictions he is
limited in his ability to participate in his children's
lives. For example, he was not permitted to attend his
son's military-training graduation due to his
registration status. Moreover, Stevens does not
volunteer at his children's schools "for fear that the
stigma of his registration status will be imposed upon
his children." *Id.* ¶45. In a similar vein, Pennington
does not pick up his grandchildren from school or attend
their school events because he worries about imposing the
stigma of his registration status on his grandchildren.

These restrictions affect several constitutionally
protected interests. In particular, the restrictions
arguably affect plaintiffs' fundamental rights to:
worship; privacy; bring up children; and direct one's
child's education. *See*, *e.g.*, *Meyer v. Nebraska*, 262
U.S. 390, 399-400 (1923); *Stanley v. Illinois*, 405 U.S.
645, 651 (1972); *James v. City of Douglas*, 941 F.2d 1539,
1543 (11th Cir. 1991).

Plaintiffs' have also adequately alleged that they face a credible threat of prosecution should they fail to comply with ASORCNA.  They both have previously been prosecuted for failing to comply with ASORCNA or its predecessor.  And there is no reason to believe that defendants will stop enforcing ASORCNA in the future. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988).

Plaintiffs have also met the requirements for causation and redressability for these claims. Defendants are collectively in charge of enforcing ASORCNA's provisions, the source of plaintiffs' injuries. And if a decision were entered in their favor, defendants would be required to remove plaintiffs from ASORCNA's registry, and cease enforcing ASORCNA's requirements against them.

But plaintiffs have not adequately pled an injury to their right to travel.  Neither Stevens, nor Pennington, has alleged how ASORCNA interferes with their right to travel.  And, while this case previously had a third

plaintiff who explained how ASORCNA interfered with his ability to travel, the court, in December 2022, dismissed that plaintiff.   Consequently, plaintiffs have no standing to pursue the right to travel.

Additionally, while some of ASORCNA's provisions may implicate an offender's right to family integrity, *see Henry v. Abernathy*, 711 F. Supp. 3d 1300, 1307-11 (M.D. Ala. 2024) (Huffaker, J.), stayed while on appeal, 2024 WL 203957, (M.D. Ala. Jan. 18, 2024) (Huffaker, J.), plaintiffs have not adequately pled future injury for their right to family integrity claim.   The right to family integrity generally refers to a family members' right to reside with other family members, such as parents' right to live with their children.   *See id.* at 1307.   And as previously discussed, because plaintiffs seek injunctive relief, they must allege future injury to that right.

The complaint provides only two factual allegations that might implicate the right to family integrity. First, in 2008, Pennington had to move out of his family

71

home and maintain two separate residences because his previous residence violated restrictions imposed by a previous sex offense registration law. Second, at some point in the past, due to his registration status, Stevens was prohibited from living in public housing with his family. While these allegations demonstrate past interference with plaintiffs' ability to live with their family, their injuries have since ceased; they both now live with their respective families in other locations. Given that plaintiffs have not made any allegations indicating that they would be unable to live with their families in the future, they have not established standing to obtain the injunctive relief they seek. As a result, plaintiffs lack standing to assert a violation of a right to family integrity.

   *ii. Standing to Bring Rational-Basis Claim.* An individual who is personally denied equal treatment suffers an injury in fact for the purposes of an equal protection claim. *See Heckler v. Mathews*, 465 U.S. 728, 738-39 (1984). Here, plaintiffs pled that they have

been, and will continue to be, personally denied their right to equal treatment. They submit that, because they were children convicted as adults, they are subject to ASORCNA for life, whereas if they had been convicted as juveniles, they would have been subject to ASORCNA for only 10 years. Plaintiffs explain that defendants' enforcement of ASORCNA against them and not children convicted as juveniles denies them their right to equal treatment. And if the court prohibited children convicted as adults from being treated differently from those convicted as juveniles, it would redress the asserted discrimination. *See id.*

### c. Fundamental-Interests Claim

As previously explained, laws that unequally burden fundamental rights are subject to heightened scrutiny. Plaintiffs submit that ASORCNA violates the Equal Protection Clause because it unequally burdens their fundamental rights to: worship; privacy; bring up children; and direct their children's education.

Correspondingly, they assert that ASORCNA must be subjected to heightened scrutiny, which they contend it cannot survive. The problem with their claim is that ASORCNA does not burden any of the fundamental rights for which they have standing to bring a claim.

First, plaintiffs contend that ASORCNA's restrictions burden their rights to freely worship. The Free Exercise Clause protects individuals' right to exercise their religion, and as part of that right, the Clause also protects individuals' ability to assemble with others for worship. *See Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 877-88 (1990). Both plaintiffs assert that they are ostracized at church and limit their atterndance due to their registration status. Stevens also asserts that ASORCNA interferes with his ability to participate at church because "his church has a daycare and activities that involve children." Amend. Compl. (Doc. 12) ¶47. While he is somewhat unclear as to how ASORCNA causes that interference, presumably it is because ASORCNA restricts

74

offenders from working, volunteering, or loitering near childcare facilities. And as such, he may incidentally face some constraints in his ability to participate in some worship services.

Contrary to plaintiffs' assertions, ASORCNA does not infringe on their right to freely worship, for any burden it imposes is incidental to a neutral law of general applicability. Neutral laws of general applicability that incidentally burden religion do not violate the Free Exercise Clause. *See Smith*, 494 U.S. at 876-82. A law is not neutral if it was passed based on the "intoleran[ce] of religious beliefs or restricts practices because of their religious nature." *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021). Moreover, "[a] law is not generally applicable" if it permits the government to give out individualized exemptions or "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* at 533-34. ASORCNA's is neutral because it was not passed

based on intolerance of religious beliefs or restrict any practices because they are religious. ASORCNA is also generally applicable because it does not have individualized exemptions or prohibit religious conduct while permitting similar secular conduct. *See Windwalker*, 579 F. App'x at 774. And any burden on plaintiffs' right to freely worship is incidental to ASORCNA's neutral and generally applicable provisions. Consequently, ASORCNA does not violate their right to freely worship.

Second, plaintiffs assert that ASORCNA burdens their right to informational privacy. The Constitution provides individuals with a right of privacy, which, among other safeguards, protects individuals from having personal information disclosed by the government. *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977); *see also James v. City of Douglas*, 941 F.2d 1539, 1543 (11th Cir. 1991) (treating the right to informational privacy as a fundamental right). Plaintiffs contend that ASORCNA infringes on this right by requiring them to register

their home address, which is then published on a state website. But, in *Doe v. Moore*, 410 F.3d 1337, 1343–45 (2005), the Eleventh Circuit rejected plaintiffs' argument and concluded that requiring sex offenders to register their personal information, and the corresponding publication of that information by the State, does not burden their right to privacy. Accordingly, this court is bound to conclude that ASORCNA's registration provisions do not violate plaintiffs' right to privacy.

Third, plaintiffs contend that ASORCNA unequally burdens their 'right to direct their children's education.' The court construes plaintiffs' argument to be thattheir rights are infringed because the stigma imposed--being designated as a sex offender--interferes with their ability to volunteer and participate in his children's school activities (or in Pennington's case, his grandchildren). But this argument relies on a misunderstanding of the caselaw surrounding the right to direct a child's education. The right refers to parental

control over the content of a child's education and the type of school they attend, not a parent's ability to be physically present at school activities. *See*, *e.g.*, *Meyer*, 262 U.S. at 400 (finding parents have a right to educate their children in foreign languages); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534 (1925) (concluding parents have a right to send their children to private school). As ASORCNA's restrictions do not limit where Stevens may send his kids to school or what they may learn, it does not burden his right to direct his children's education. And for the same reason--even assuming the right extends to some grandparents--ASORCNA does not burden Pennington's right to direct his children's (or grandchildren's) education.

Fourth and finally, plaintiffs assert that ASORCNA infringes on their right to raise their children. Plaintiffs do not explain how this right was violated apart from their assertions about how their rights to direct their children's education or family integrity were infringed. To the extent that there is a distinct

right to raise children, it refers to the right to procreate for the purposes of conceiving children, have custody over one's children, or control who visits with one's children. *See*, *e.g.*, *Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535 (1942) (discussing the fundamental right to have children); *Troxel v. Granville*, 530 U.S. 57 (2000) (finding parents have a fundamental right to control who visits their children); *Stanley*, 405 U.S. 645 (finding parents have a fundamental right to custody of their children). Plaintiffs do not explain--nor can the court figure out--how ASORCNA burdens any of these rights.

As plaintiffs have not demonstrated that ASORCNA burdens any of their fundamental rights, their fundamental-interests claim will be dismissed.


### d. Rational-Basis Claim

Lastly, the court will examine plaintiffs' rational-basis claim. Since plaintiffs have not established that ASORCNA burdens a fundamental right, and

because neither sex-offender status, nor age, is a suspect class, ASORCNA is subject to rational-basis review, rather than heightened scrutiny. *See Moore*, 410 F.3d at 1346. Classifications subject to rational-basis review have "a strong presumption of validity," and those challenging the classification have the burden of proving that the law is entirely irrational. *Beach Commc'ns*, 508 U.S. at 314-15. In other words, a classification will be upheld under rational-basis review so long as "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* at 313.

Here, plaintiffs claim that there is no rational basis for the differential treatment between children convicted of sex offenses as adults and those convicted as juveniles. In essence, plaintiffs contend that, while ASORCNA does pursue a legitimate goal of "[p]rotecting public safety and curtailing recidivism," ASORCNA's differential treatment between children convicted as juveniles and those convicted as adults is so attenuated

from that goal as to be irrational. Pls.' Resp. (Doc. 25) 66-69. Plaintiffs assert that ASORCNA's differential treatment between the two classes is unsupported by--and contrary to--scientific evidence.

While plaintiffs make a compelling argument as to why ASORCNA's classification may be bad policy, they have not met their burden of showing that the classification is entirely irrational. Even if ASORCNA's classification policy runs contrary to the evidence, it does not mean the classification is irrational. Under rational-basis review, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns*, 508 U.S. at 315. As already explained, when a child commits a sex offense, that child is initially tried in juvenile court. *See* Ala. Code § 12-15-114. However, a child 14 years or older may be transferred to adult criminal court if a juvenile judge determines that transfer is appropriate based on an individualized inquiry into the child's circumstances. *See id.*

§ 12-15-203.  Given that children tried as adults must go through that individualized inquiry, legislators could have rationally speculated that those teenagers convicted as adults have a risk of recidivism much closer to adults than other children convicted as juveniles.

Because plaintiffs have not established that ASORCNA's differential treatment of children convicted as juveniles from children convicted as adults is entirely irrational, plaintiffs' rational-basis claim will be dismissed.

### III. CONCLUSION

For the above reasons, defendants' motion to dismiss will be granted.  All of plaintiffs' claims, to the extent the court rejected them (in whole or in part) based on sovereign immunity or lack of standing, will be dismissed without prejudice to that extent; the remainder of this litigation will be dismissed with prejudice.[8]

---

8. If a party takes issue with whether a claim or part of a claim should be dismissed with or without prejudice, that party may ask, within the time allowed

82

An appropriate judgment will be entered.

DONE, this the 31st day of March, 2025.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

---

by law, for the court to reconsider the nature of the
dismissal.